No. 57,694

CLYDE W. WENGER and JOAN A. WENGER, *Appellees*, v. MELVIN W. WENGER and VIOLA WENGER, *Appellants*.

(716 P.2d 550)

Opinion filed March 28, 1986.

*Danny R. Carpenter*, of Watson, Ess, Marshall & Enggas, of Kansas City, Missouri, argued the cause, and *Kathryn M. Coonrod,* of the same firm, and *Scott H. Kreamer*, of the same firm, of Olathe, were with him on the briefs for appellants.

*Edward C. Hageman,* of Hageman & Hageman, of Stockton, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

HOLMES, J.: Melvin W. Wenger and Viola Wenger, his wife, appeal from various judgments and orders entered by the district court in an action brought for an accounting, recovery of money and dissolution of a corporation.

Clyde W. Wenger and his wife Joan A. Wenger (appellees) and Melvin W. Wenger and his wife Viola Wenger (appellants) incorporated Wenger Pelleting Company, Inc., (WPC) and each owned 25% of its capital stock. WPC was originally organized in 1967 to engage in the business of operating an alfalfa pelleting plant in Falls City, Nebraska. For a time following its incorporation, both Clyde and Melvin were active in the management of WPC. In the early 1970's Clyde formed the C. W. Mill Equipment Company while Melvin branched off into the dog food business under the name of Agri-Gold Products Company. It appears that on March 1, 1972, all activity of WPC at the Falls City plant ceased. On April 23, 1973, appellees instituted this action against Melvin and Viola Wenger and several creditors of the corporation. Appellees sought appointment of a custodian for WPC (or a receiver if the corporation was found to be insolvent) for the purposes of conducting an accounting and audit of the

financial affairs and management of WPC and to aid in its dissolution; judgment against Melvin and Viola Wenger for misappropriation of funds, the amount of which was to be determined by audit or accounting; and judgment against the corporation for sums due the appellees. The appellees also sought to enjoin three creditors from acting against appellees on their personal guarantees on corporate notes. The action against the creditors was resolved years ago and they are not involved in this appeal. The appellants counterclaimed seeking a money judgment against WPC; an accounting and audit of C. W. Mill Equipment Company; and judgment against the appellees for sums misappropriated to their personal use.

It appears to be conceded that Melvin had possession of the books and records of WPC that were needed to perform an audit of its operation. As early as February of 1975 appellants were aware that the court expected Melvin to make an accounting of the affairs of WPC. From that point on appellants refused or neglected to comply with the directions of the court and requests of their own counsel. Numerous hearings followed, none of which were productive. In June of 1976 the court had appointed a certified public accountant to audit the books and records of WPC. In September 1976 judgment was granted one of the creditors previously referred to and an appeal was taken to this court. Proceedings then remained in limbo until January 1979 when that appeal was resolved by an unpublished opinion of this court. (Case No. 48,997; 225 Kan. clxx.) Thereafter, appellees began a concerted effort to obtain the books and records of WPC so the court-appointed CPA could perform the necessary audit and render an accounting. It would serve no useful purpose, and only prolong this opinion, to detail the numerous court proceedings, none of which were successful in obtaining any cooperation by appellants. In May 1980 appellants' counsel was allowed to withdraw due to the failure of appellants to cooperate with their own counsel.

As early as December 1, 1975, appellees began seeking sanctions against appellants for their continued refusal to make discovery. On March 30, 1976, appellees, as a part of their numerous requests for sanctions against the appellants, began seeking a default judgment. Without going into further detail the court on July 10, 1980, finally granted appellees a default judg-

ment against the appellants for $38,616.00. The journal entry of judgment was filed July 17, 1980. The judgment was rendered as a sanction under K.S.A. 60-237(b)(2)(B) and (C) for appellants' repeated refusal to make discovery and produce the records of WPC. The journal entry made no mention of appellants' counterclaims. On September 17, 1980, new counsel for appellants filed a motion to set aside the default judgment and after a hearing on April 8, 1981, the motion was denied unless appellants produced the requested records on or before 5:00 p.m. April 20, 1981. The records were not forthcoming and on September 9, 1981, the court formally overruled the motion to set aside the judgment. No appeal was taken from that order. On July 15, 1983, a motion to set aside or modify the default judgment was filed on behalf of the appellants by new associate counsel from Missouri. Appellants also started a comprehensive campaign seeking discovery in support of their counterclaims. July 5, 1984, appellees filed a motion for an order dismissing appellants' counterclaims and ultimately on November 19, 1984, the appellants' counterclaims were dismissed. This appeal followed. It should be noted that appellants did turn over one barrel of records but they were not those needed for an audit and accounting. It was not until after the default judgment had been finally entered that a serious attempt was made to produce the required records.

The appellants' first issue on appeal is that appellees' original petition failed to state a claim upon which relief could be granted. The crux of appellants' claim is that a stockholder may not bring an action to personally recover debts of the corporation or for an accounting. While appellants' argument might ordinarily have merit, in the instant case the appellees and appellants constituted 100% of the stockholders of WPC. Early in the proceedings in a conference in October of 1973 and again in a pretrial conference held June 16, 1975, the parties agreed that the four parties here involved were the only ones interested in the outcome and they concurred in proceeding as an action between the original parties. Appellants can not now be heard to complain about procedures they agreed to over ten years ago.

The second issue on appeal is whether the trial court's default judgment award of $38,616.00 was proper. Appellants claim the trial court is restricted to awarding only those damages prayed

for in the "demand for judgment," citing K.S.A. 60-254(c). In the present case appellees filed a motion for summary judgment and a request for sanctions. In their motion they detailed the proceedings in the case including the basis for their request for judgment in the amount of $38,616.00. In the October 4, 1979, hearing this amount was further explained. The original prayer of the petition, in addition to seeking a specific sum of $2,306.81, sought such additional amounts as might be disclosed by the requested accounting. In his memorandum decision rendered November 8, 1983, overruling appellants' motion to set aside the judgment or to modify it, the trial judge stated:

"The above and within action was filed on April 23, 1973, which was prior to the time the undersigned judge assumed judicial duties on January 13, 1975. It languished in the above Court for many years primarily because of either the inability or reluctance on the part of defendants Melvin W. and Viola Wenger to comply with rules relating to discovery as well as Court Orders relating thereto. In either case the delay occasioned by the actions or inactions of the defendants Melvin W. and Viola Wenger were unjustifiable. *The default judgment entered herein may well not be the one that would have been entered had this matter gone to trial on the merits of the claims of the parties.* However, it was the defendants who had been in control of the records relating to the issues herein, and their efforts to furnish such records in compliance with discovery rules and orders of the Court, were most feeble even though they were given most lenient consideration by the Court." (Emphasis added.)

The judgment rendered was well within the discretion of the court and does not run afoul of K.S.A. 60-254(c).

Next the appellants take a somewhat different approach to the argument that the $38,616.00, if owed at all, was due the corporation and not to appellees. What has already been said about appellants' first contention, that the petition did not state a cause of action, applies equally to this argument.

The fourth issue on appeal is whether there was competent evidence to support the trial court's finding that the appellants had failed to comply with discovery orders. In the present case the trial judge entered a default judgment as a sanction permitted under K.S.A. 60-237(b)(2) for failure to comply with discovery. On appeal the appellants make numerous statements attempting to nullify the appellants' refusal to produce the corporate records. The appellants' urgings are misplaced. Review of the record indicates appellants were afforded ample opportunity to produce the records; indeed, more benevolent treatment is difficult to imagine. The appellants continually received extensions

and allowances, despite being warned repeatedly about the necessity of an accounting in this case. In the journal entry of judgment the trial court observed the predicament that existed, noting the absence of any appropriate alternative sanctions.

In oral argument, and in their briefs, the appellants contend there was no specific order as to what was to be produced and, therefore, they cannot be in violation of a nonexistent order. Appellants well knew what the court expected them to produce. Countless hearings were held where counsel and the court discussed the records and although some specific written orders may be lacking there is no doubt as to the court's orders and its expectations that those orders would be carried out. Appellants were never in a position where they did not know what was expected of them.

While the granting of a default judgment for failure to make discovery may be the ultimate sanction and should only be applied in the most extreme cases, there comes a time when a court may have no other choice. In considering whether to grant a default judgment for failure of a party to make discovery, the court must be extremely careful in exercising its discretion to do so. *Binyon v. Nesseth*, 231 Kan. 381, 383, 646 P.2d 1043 (1982). In *Binyon* the court recited a number of prerequisites to imposition of the sanction of default. "(1) Was the discovery sought related to a dispositive issue? [Citation omitted.] (2) Was discovery not available by alternative means? Or could the party seeking discovery not be protected by imposition of another sanction? [Citation omitted.] (3) Was the defendant offered a hearing at which he could have offered evidence of excusable neglect or good faith?" Examination of the record in light of these considerations serves only to reinforce the trial court's judgment. The discovery requested was vital to the accounting, and the lack of an accounting was the only element preventing resolution of this case. There was no alternate source available for obtaining the necessary financial information. Finally, appellants were given ample opportunity on numerous occasions to present any excuse or explanation for their failure to produce the corporate records. There was ample justification for the trial court's action.

Next, appellants contend the default judgment and dismissal of their action violated their constitutional rights to due process

of law. To raise this issue appellants request the court to assume the default judgment was entered to punish Melvin and Viola Wenger. In *Fields v. Stauffer Publications, Inc.,* 2 Kan. App. 2d 323, 328, 578 P.2d 1138, *rev. denied* 225 Kan. 843 (1978), the court stated:

"[T]he granting of default judgment against a party who refuses to allow discovery does not violate the due process clause of the Constitution of the United States . . . ."

The sanction here was not invoked to punish the appellants but to finally bring to a close years of litigation which had continued due to the appellants' failure to follow court orders. All things must eventually come to an end and we find no abuse of discretion by the trial judge in granting the default judgment.

The final issue raised by the appellants is that the court erred in dismissing their counterclaims for failure of prosecution. The appellants claim that by renewing prosecution of their counterclaims, after unsuccessfully attempting to have the default judgment set aside, they sufficiently preserved their action to prevent dismissal for want of prosecution. Appellants rely upon several federal cases decided under Fed. R. Civ. Proc. 41(b). We do not find them convincing. Appellants' efforts came too late. Numerous cases have recognized that the ultimate sanction of dismissal or default judgment may be justified. *Flanigan v. City of Leavenworth,* 232 Kan. 522, 657 P.2d 555 (1983) (four years); *Coutts v. Crider,* 219 Kan. 692, 549 P.2d 1019 (1976) (six years); *Carter v. State Department of Social Welfare,* 186 Kan. 187, 348 P.2d 609 (1960) (one year); *Independent Mfg. Co. v. McGraw-Edison Co.,* 6 Kan. App. 2d 982, 637 P.2d 431 (1981) (dismissal after a five-month delay).

In the present case the action was in its eleventh year of existence when the appellants finally initiated substantial action on their counterclaims. Over two years had passed from the entry of default judgment against the appellants; levy and execution had occurred as the appellees attempted to satisfy their judgment. Responsibility for the delay in the resolution of the entire matter rests squarely on the appellants' shoulders. Under these circumstances, it does not appear the trial court erred in dismissing the appellants' counterclaims for failure to prosecute.

In conclusion, the law favors trial of causes on the merits and looks with disfavor on default judgments. *Sharp v. Sharp,* 196

Kan. 38, 409 P.2d 1019 (1966). However, a default judgment (or dismissal) may become necessary when inaction of a party frustrates the orderly administration of justice. *Jenkins v. Arnold,* 223 Kan. 298, 573 P.2d 1013 (1978). The appellate courts of Kansas have recognized the severity of judgment by default as a sanction for failure to comply with discovery orders, and emphasized the importance of the careful exercise of judicial discretion before imposition of that sanction. *Binyon v. Nesseth,* 231 Kan. 381. The standard of review on appeal from a default judgment is whether there has been an abuse of discretion. *Lorson v. Falcon Coach, Inc.,* 214 Kan. 670, 522 P.2d 449 (1974).

The present case lingered in the district court for well over twelve years. The district court, after extremely congenial and lenient treatment of the appellants throughout the whole drawn-out affair, ultimately was compelled to enforce the requested sanctions. In the journal entry dismissing appellants' counterclaims, the court commented:

"Throughout these proceedings it was generally agreed between counsel, and has been reflected in various Orders, that issues in this case could have become clarified when an accurate audit of company books was performed. Throughout the entire proceedings in this case the problem has been with defendant Wengers' failure and refusal to produce the necessary company books and records for an accurate audit. The CPA appointed by the Court found that a general ledger or cash receipt or cash disbursement ledger were not included in the items submitted by defendant Wengers and was thus unable to make a professional audit of the records in question."

As observed by the trial judge, the default judgment that was entered may well not have been the judgment that would have been entered had the matter gone to trial on the merits. However, the ultimate sanctions of dismissal or default judgment may be necessary when all else fails. We find no abuse of discretion in the court's application of such sanctions.

The judgment is affirmed.