No. 70,392

JOSEPH O. HAWKINS, *Plaintiff/Appellee*, v. CHRISTIAN DENNIS, *Defendant*, and KANSAS FARM BUREAU MUTUAL INSURANCE COMPANY, INC., *Defendant/Appellant*.

(905 P.2d 678)

Opinion filed October 27, 1995.

*Paul Hasty, Jr.*, of Wallace, Saunders, Austin, Brown and Enochs, Chartered, of Overland Park, argued the cause and was on the brief for defendant/appellant.

*William J. Graybill*, of Graybill, Richardson & Witcher, of Elkhart, argued the cause, and *John Richardson*, of the same firm, and *Jacob S. Graybill*, of Graybill, Craig & Fuqua, of Wichita, were with him on the briefs for plaintiff/appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: This is an appeal by Farm Bureau Mutual Insurance Co., Inc., (Farm Bureau) from a default judgment entered against Farm Bureau, which resulted from imposition of sanctions for its failure to comply with the district court's discovery order. In an unpublished opinion filed December 16, 1994, the Court of Appeals reversed and remanded, and this court granted Joseph Hawkins' petition for review.

Hawkins initiated this garnishment action against Farm Bureau to collect the unpaid balance of a judgment recovered against

Christian Dennis for personal injuries arising out of a motor vehicle accident. In order to put this appeal in context, it is necessary to relate the factual background of the personal injury claim.

On the night of April 16, 1989, there was a collision between the automobile driven by Dennis and the motorcycle ridden by Hawkins. Dennis was attempting to pass a semi-trailer truck when he collided with Hawkins in Hawkins' lane of travel. Hawkins sustained serious injuries which required the amputation of his left leg below the knee.

Dennis' blood alcohol level was reported to be 0.15 percent. He pled nolo contendere to a charge of vehicular battery arising from the collision.

The automobile Dennis was driving belonged to someone else, who had consented to his use of it. A $100,000 liability insurance policy had been issued to the car owner by Farm Bureau. Although Farm Bureau initially denied coverage on the ground that the policy had lapsed due to the insured's failure to pay the premium, the insurer later conceded coverage.

The accident report showed that Dennis' vehicle came to rest on the east side of the highway. He told the investigating officers that he hit a car and did not know where it went.

In October 1989, Phil Ferry, a Farm Bureau adjuster, interviewed Dennis in jail. Dennis told Ferry that he had pulled out to pass a truck, thought he had enough time to complete the pass, and struck an approaching motorcycle before he could return to his lane of travel. Dennis also stated that he watched the motorcycle continue for approximately ¼ mile until its rider got it stopped; he walked in that direction but was unable to find the motorcycle. He also stated that his automobile came to rest on the west side of the highway.

The district court stated that "Ferry made no attempt to resolve the discrepancies between Dennis' statement given at the jail and the statement he reportedly gave the investigating traffic officers the night of the accident."

On October 5, 1989, Hawkins filed suit against Dennis. After a jury trial, judgment was entered in Hawkins' favor in September 1991 in the amount of $524,176.67. After Farm Bureau tendered

its policy limit, an unpaid balance remained on the judgment in the amount of $422,488.52. Hawkins served a nonwage garnishment summons on Farm Bureau for the excess judgment. By June 17, 1993, when the district court entered default judgment against Farm Bureau in the garnishment proceeding, interest had swelled the balance to $474,864.65.

The discovery dispute occurred during the garnishment proceedings initiated by Hawkins against Farm Bureau. No appeal was taken from the personal injury judgment in the amount of $524,176.67. Hawkins' request for nonwage garnishment from Farm Bureau is based on the theory that the insurer is indebted to Dennis because it breached its duty to act in good faith and without negligence in representing him, which resulted in an excess judgment being entered against him. Due to Farm Bureau's failure to produce documents as ordered, the district court ordered that Farm Bureau's nonwage garnishment answer be stricken and prohibited the insurer from defending itself in the garnishment proceeding. As a result, default judgment was entered against Farm Bureau in the garnishment proceeding in the amount of $474,864.65. In addition, $319,436.81 was awarded to Hawkins for costs and attorney fees pursuant to K.S.A. 40-256 on grounds that Hawkins' evidence showed that Farm Bureau was negligent and acted in bad faith in conducting Dennis' defense and in refusing without just cause to pay the full amount of the loss. After Farm Bureau filed a notice of appeal from the judgment in the garnishment proceeding, Hawkins filed in the district court a second request for nonwage garnishment on Farm Bureau funds held by FirstBank. Before Farm Bureau's supersedeas bond was approved by the Court of Appeals, and over the objection of Farm Bureau, FirstBank was ordered to pay and did pay $19,190.21 into the court, and it was disbursed to Hawkins.

With this background, we turn to Farm Bureau's first claim, that the district court abused its discretion in striking Farm Bureau's answer in the garnishment proceeding as a discovery sanction and entering default judgment. The discovery dispute with which we are concerned centered on Farm Bureau's refusal to produce the original files of Farm Bureau employees Phil Ferry and Vernon

Schwartz. Farm Bureau's failure to answer interrogatories and produce other documents had been the subject of Hawkins' first motion to compel discovery, which was filed in July 1992, and which was granted by the district court's order of August 13, 1992. It appears that Farm Bureau complied in part with this order, but some documents which were ordered produced remained in contention during the subsequent discovery dispute. An unpaid fine also clouded the proceedings.

The discovery process, described as "tortuous" by the Court of Appeals, started on July 24, 1992, when Hawkins filed a motion to compel discovery due to Farm Bureau's failure to respond to a request for documents and interrogatories. What followed is set out in the Court of Appeals opinion as follows:

"A hearing on Hawkins' motion to compel was noticed for August 5, 1992. Farm Bureau did not appear at that hearing. The trial court, after concluding that notice of the hearing had been reasonable, granted Hawkins' request and ordered Farm Bureau to respond on or before August 25, 1992. The court also awarded $400 in attorney fees and expenses.

"The requested documents and interrogatories were mailed on August 25, 1992. After reviewing the interrogatories, Hawkins' counsel found that a set of the interrogatories had not been signed and documents that were to be attached to the interrogatories were not attached. It was later discovered that defense counsel had erroneously given Hawkins an unsigned draft copy of the original interrogatories.

"A controversy would later arise as a result of two of the answers to the request for documents. Request number 6 sought all claims manuals or other publications setting out the policies and procedures for investigating and adjusting automobile liability claims. Request number 7 sought all manuals or other written materials describing the procedures for handling third-party liability claims believed to be in excess of the liability insurance limits provided by the policy.

"Farm Bureau's response to both requests was that no such documents had been located that were in use at the time of the accident, the claim, or the suit. Farm Bureau later claimed it did not produce certain manuals because they were not current and, therefore, not within the scope of the interrogatories.

"A second confrontation over discovery occurred on November 19, 1992, which is pivotal in this appeal. Hawkins' counsel was taking the deposition of Ferry. Pursuant to a subpoena, Ferry brought his original file to the deposition. Ferry's original file was marked as Hawkins' Exhibit number 1. A second file belonging to Ferry's supervisor, Vern Schwartz, was marked as Hawkins' Exhibit number 2.

"At the conclusion of the deposition, Hawkins' counsel requested that Exhibits 1 and 2 be given to the court reporter to be copied and the copies attached to

the deposition. Farm Bureau's counsel, Mr. Hasty, refused and withdrew the originals. Farm Bureau argued that Hawkins had been given the opportunity to verify the copies that had been produced previously were copies of the originals and had been given the opportunity to compare those with the original file documents present at the deposition. The following colloquy took place between opposing counsel:

'MR. WILLIAM GRAYBILL: I offer both Plaintiff Exhibits 1 and 2. That's all the questions I have.

'(Whereupon, an off-the-record discussion was had, after which the following proceedings were had:)

'MR. WILLIAM GRAYBILL: Well, I'm offering the exhibit. They should be part of the deposition. We would request that the court reporter take the files and copy them and send them back, the originals, back to Farm Bureau.

'MR. HASTY: We will keep the originals. If you want a copy, we will send it to you. We already sent you one.

'MR. JACOB GRAYBILL: The copy we have received is not a copy of the material that was presented here this morning.

'MR. HASTY: I couldn't speak to that.

'MR. JACOB GRAYBILL: That's why we want the court reporter to copy that, what was presented here this morning.

'MR. HASTY: I understand what you say, but we will keep the original. We will send you another copy if you like, and we will send you a bill for this one of Mr. Jake Graybill's unless the court reporter does it. We have no way of knowing whether it's been accurately copied or not.

'MR. HASTY: I'm not going to argue with you. We are going to withdraw the exhibit.

'MR. WILLIAM GRAYBILL: Well they are here—they are here pursuant to a subpoena.

'MR. HASTY: I'm not arguing with you either.

'(Whereupon, Hawkins' Exhibits [Nos.] 1 and 2 were retained by the witness, after which the deposition was concluded.)'

"On December 14, 1992, Hawkins filed a second motion to compel discovery. He moved the court for an order striking Farm Bureau's pleadings and entering a default judgment as provided by K.S.A. 60-237(b)(2)(C). In the alternative, Hawkins requested that the court compel Farm Bureau to produce the original of Exhibits 1 and 2 to be annexed to Ferry's deposition. Finally, Hawkins requested an order compelling Farm Bureau to produce the manuals and other documents, the existence of which had been denied, that had been requested on

May 7, 1992. Notice was given that a hearing on the matter would be held on January 6, 1993.

"On January 6, 1993, Farm Bureau again failed to appear. Nevertheless, the trial court proceeded. In an order filed January 14, 1993, the court issued a second order compelling discovery. The court found Farm Bureau had failed to produce the manuals or documents describing the policies and procedures for investigating and handling such a claim, in violation of the court's order that they be produced by August 22, 1992. The court renewed its order that these items be produced.

"With regard to Exhibits 1 and 2, the court found that '[p]laintiff properly moved to annex the Exhibits as part of the deposition. The Garnishee, without having complied with the provision of K.S.A. 60-230(f)(1) arbitrarily and without legal authority withdrew said exhibits and refused to allow the court report to annex the same to the deposition.' The court then ordered:

> '2. The garnishee shall deliver prior to January 22, 1993, the complete original files of Phil Ferry and Vernon Schwartz which were marked as Exhibits 1 and 2 respectively to the deposition of Phil Ferry to . . . the Court Reporter before whom the deposition was taken. Said originals are to be annexed to the deposition of Phil Ferry by the Court Reporter. In the event Garnishee fails to comply with this order by January 22, 1993, the parties are hereby notified that the court will consider entering judgment in favor of [Hawkins] on February 2, 1993.'

In addition, the court awarded Hawkins $750 as a sanction for failure to comply with discovery. The $750 was to be paid by January 22, 1993.

"The order further gave notice of a hearing to review Hawkins' motion for a default judgment on February 2, 1993. However, due to a last minute motion for a continuance by Farm Bureau, the hearing was rescheduled for February 9, 1993. At the February 9 hearing, Hawkins advised the court that on January 22, 1993, he had received two packages from Farm Bureau. The packages contained several items, including what appeared to be Exhibits 1 and 2 of Ferry's deposition, a copy of the reinsurance policy, a claims manual, and signed interrogatories.

"Hawkins' counsel offered several objections to the items that were produced on January 22, 1993. First, the section of the claims manual that dealt with the procedure for handling personal injury claims was missing. After determining that a section was missing, Hawkins' counsel wrote Farm Bureau regarding the omitted section. Farm Bureau claims it then faxed the missing section to Hawkins' counsel. As of February 9, 1993, Hawkins' counsel maintained he still had not received the missing section of the claims manual.

"On February 9, 1993, Farm Bureau had not yet paid the $750 sanction the court had ordered to be paid on or before January 22, 1993. Farm Bureau argued that '[w]ith regard to the sanctions, [it] received no such order. What [the trial judge] did was enter a judgment, which is different than that order for payment.'

"Hawkins' counsel also argued that Exhibits 1 and 2, the files of Ferry and Schwartz respectively, had been altered and were incomplete. With respect to

Exhibit 1, Farm Bureau had apparently ordered the pages of Ferry's file be numbered. When Hawkins' counsel received Exhibit 1, certain sequential pages were not present. Farm Bureau later attributed the gaps in the pages to the mistakes of a paralegal when numbering the pages.

"The file produced on January 22, 1993, was supposed to be Exhibit 2, the original file of Schwartz. However, it turned out to be a copy of a different file, the 'master file.' After concluding the purported Exhibit 2 was not the correct file, Hawkins' counsel noticed differences between the erroneously produced 'master file' and the copy of the 'master file' that Farm Bureau had produced months earlier. Farm Bureau's only explanation was a guess that the paralegal somehow got confused.

"The trial court reserved ruling on Hawkins' motion to strike Farm Bureau's pleadings and enter a default judgment. The trial court stated:

> 'I'm going to reserve ruling on this motion . . . to strike pleadings and grant default judgment. And I'm going to give Farm Bureau fifteen days to fully comply with the discovery orders that have been issued in this matter. And I want it to be clearly understood that if those orders are not complied with, that I will grant the motion to strike and the motion for judgment. . . . So, this is Farm Bureau's absolute last chance.'

"On March 3, 1993, a hearing was held to determine if Farm Bureau had fully complied. Hawkins' counsel argued that Farm Bureau had still failed to comply with the court order. Farm Bureau had not yet paid the $750 sanction. It maintained the reason for not paying was to avoid acquiescence in the judgment, which would preclude raising the issue on appeal.

"There were problems with Exhibit 1, the file of Mr. Ferry. Several items were missing from the file. Included in the list of items missing was Ferry's original claims log, which apparently consisted of one page. Farm Bureau acknowledged that Hawkins had not received the original claims log. It had been lost. However, both parties had a copy.

"Hawkins' counsel was also concerned that Exhibit 1 was missing a total of 17 pages. Farm Bureau argued that the pages were not missing, but rather attributed the gaps in the page numbers to the mistakes of a paralegal when numbering the pages. The paralegal allegedly used some of the missing numbers on items that were not part of the Exhibit 1 file. Because Farm Bureau had refused to allow the court reporter to copy Exhibits 1 and 2 and the time of Ferry's deposition, it was impossible for Hawkins' counsel to verify that all the documents in Exhibit 1 had been produced.

"The trial court stated: 'I have some real concerns where there is a dispute over withdrawing original documents at a deposition, over one party withdrawing those without consulting with the Court for a decision on that particular matter. It just invites this type of problem.' The trial court ordered Farm Bureau to produce copies of the documents which had received the missing numbers.

"On March 12, 1993, Hawkins took the deposition of Gary Hinton, Claims Manager for Farm Bureau. His deposition testimony indicated that Farm Bureau had written policies and standards for the prompt investigation of claims. Farm Bureau had consistently denied the existence of such materials. Farm Bureau subsequently acknowledged that 'giving the Hawkins' request a reasonable interpretation, [the guidelines] probably were covered' by the May 7, 1992, request for documents.

"On March 17, 1993, Hawkins filed a third motion to compel discovery. Hawkins again asked the court to strike Farm Bureau's pleading and enter a default judgment. In the alternative, Hawkins requested an order compelling production of all material constituting written standards for the prompt investigation of claims arising under its insurance policies."

On April 19, 1993, counsel and the district court judge had a telephone conference in which the attorneys again presented their arguments on the second order compelling discovery.

Referring to the district court's order, Hawkins' counsel stated in leading off the telephone arguments that the first requirement (to produce manuals and policies) had been met on March 12, that it was impossible to tell whether production of the Ferry and Schwartz files was complete due to Farm Bureau's failure to follow the procedure spelled out in the second requirement, that the claims log had been produced on March 16, and that the $750 fine which was the subject of the third requirement had not been paid. Farm Bureau's counsel took the position that all discovery issues were ruled on and/or moot. With regard to missing numbers, he stated: "[W]e didn't use all the numbers and that doesn't make any difference either. Some of the pages that were not produced were not part of the original files, but they were numbered and I sent those to the Court in camera." The district court judge informed him that they had not been attached or enclosed with counsel's letter. Farm Bureau's counsel rejoined:

"That's the first I heard of that, Judge. Obviously the letter says they were there, and as far as I knew they were. In any event, there is no document that's missing, there is no document that was not produced. . . . Everything has been located and it's all been produced in original form. Plaintiff's only complaint is that he didn't—all of the numbers weren't used and I just don't see that as a complaint about discovery."

Hawkins' counsel pointed out that the number stamped on the claims log was 62, which was one of the numbers he had listed as

missing from among the copies of documents in Ferry's file. The suggestion seems to be that Farm Bureau's counsel's explanation for the absence of documents with numbers from the sequence— that all the numbers were not used—did not explain why document 62 was not produced and may not explain why others remain missing. That is, the claims log, a document stamped with one of the missing numbers, was specifically remembered because it was on purple paper. After it was specifically identified as missing and requested by Hawkins' counsel, it was produced. Hawkins' counsel likely would not have been able to specify documents without such distinguishing features.

At the conclusion of the telephone conference, the district court judge announced that he would grant the motion. He stated:

"I'm going to strike all of Farm Bureau's pleadings including the non-wage garnishment answer filed herein, I'm going to prohibit Farm Bureau from presenting any claims asserting any defenses or presenting any evidence in relationship to the plaintiff's claim in the garnishment action and I'm going to order a default hearing so that the plaintiff can present evidence in support of his claim that Farm Bureau breached its duty as an insured to act in good faith and without negligence in handling the defense and representation of its insured Chris Dennis and we just need to pick a date for that hearing."

After considerable effort to find a date on which both Farm Bureau's counsel and the district court judge were free, Farm Bureau's counsel suggested June 17, 1993, and the default hearing was scheduled to begin that morning. On May 28, 1993, a journal entry was filed which stated in pertinent part:

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that all of the Garnishee's pleadings filed herein including its Non-wage Garnishment Answer are hereby stricken from the record; the Garnishee is hereby prohibited from presenting any claims, asserting any defenses, or presenting any evidence in relationship to the Plaintiff's claims in this action.

"IT IS THE FURTHER ORDER of this Court that the Plaintiff's evidence supporting his claims that the Garnishee breached its duty as an insurer to act in good faith and without negligence in the handling, the defense and representation of its insured, Christian Dennis, will be heard and considered by this Court at the Stanton County Courthouse, Johnson, Kansas on June 17, 1993 at 9:30 a.m."

Before the scheduled hearing, Hawkins filed a motion for default judgment and an award of attorney fees and expenses pursuant to K.S.A. 40-256.

On June 17, Farm Bureau's counsel, Paul Hasty, did not appear because he was involved in a jury trial in another district. A motion for continuance had been faxed to the court, but no hearing had been requested, and Hawkins had not had an opportunity to respond. On a previous occasion, Farm Bureau's counsel had been told by the district court judge that ex parte motions to continue were not granted and the procedure for calling up a motion for hearing in order to get the court to act on it had been explained. An attorney from Hasty's office who was not familiar with the case made an appearance on behalf of Farm Bureau and urged the court to delay the proceeding. Hawkins' counsel opposed continuing the hearing to a later date because he had witnesses scheduled to appear, Hawkins had cut short his vacation in order to be there, no effort was made until the last minute by Farm Bureau's counsel to obtain a continuance and that effort was ineffectual, and this request was simply a perpetuation of the pattern which had come to dominate the case. The district court judge noted that as late as June 8, Farm Bureau had filed a motion to set aside the court's ruling of April 19, no hearing date had been requested for it, and no motion to continue had accompanied it. The district court denied the motion for continuance as being untimely and unjustified. Hawkins presented evidence. Counsel for Farm Bureau was given 10 days to make counter-designations of portions of depositions not read by Hawkins' counsel. The parties were given 55 days to submit proposed findings of fact and conclusions of law. On September 8, 1993, the district court filed its findings of fact and conclusions of law and journal entry granting judgment against garnishee Farm Bureau in the amount of $474,864.65 as a consequence of its nonwage garnishment answer having been stricken. A $319,436.81 award of attorney fees and costs, which is also the subject of this appeal, was made pursuant to K.S.A. 40-256.

K.S.A. 60-237(b)(2) provides in pertinent part:

"If a party . . . fails to obey an order to provide or permit discovery, . . . the judge before whom the action is pending may make such orders in regard to the failure as are just, and among others the following:

(A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence;

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

(D) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination;

. . . .

"In lieu of any of the foregoing orders or in addition thereto, the judge shall require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the judge finds that the failure was substantially justified or that other circumstances make an award of expenses unjust."

On appeal, Farm Bureau contended that it had complied with the district court's discovery order. It further argued that the district court had not found a refusal to comply, but instead found only that it could not determine whether there had been compliance. Farm Bureau relied on *Williams v. Consolidated Investors, Inc.,* 205 Kan. 728, 472 P.2d 248 (1970), for the proposition that the district court's finding was insufficient as a matter of law to support the sanction of default judgment. Farm Bureau argued that imposition of the sanction of default judgment requires a willful or deliberate refusal to comply.

The Court of Appeals did "not question the imposition of serious sanctions by the court for Farm Bureau's repeated and almost inexplicable breaches of our discovery rules." The Court of Appeals, however, did express the opinion that "Farm Bureau has quite possibly produced that which has been requested through discovery." The Court of Appeals stated:

"The trial court did not find the discovery had not been produced, but only that there are still some unresolved questions as to its completeness. The court's skepticism and caution in accepting Farm Bureau's protestations of compliance is certainly understandable given the either slovenly or cavalier approach to discovery it has had to deal with. However, striking the garnishee's defenses, entering judgment against it for $474,864,65 plus attorney fees of $316,576.43 (a figure not explained by the court) and costs of $2,860.38, on a claim which may be defensible, appears to be excessive."

The case was remanded with directions to the trial court to make "further inquiry" into the missing numbers.

Hawkins points out that Farm Bureau had not taken advantage of several opportunities given to it by the district court to come forth with support for its explanation of the missing numbers and establish that it had not acted in bad faith. For example, the district court directed Farm Bureau's counsel to provide the documents he had referred to which were not part of either the Ferry or Schwartz files but had been stamped with numbers in the sequence. Although Farm Bureau's counsel represented that he had located documents of this description and sent copies to the district court judge, they never surfaced. For another example, Farm Bureau's counsel never offered the testimony or affidavit of the paralegal who could have explained how and why and which pages were numbered. Hawkins quotes the following principle from *Armstrong v. City of Salina*, 211 Kan. 333, 339, 507 P.2d 323 (1973):

"Failure of a party to an action to throw light upon an issue peculiarly within his own knowledge or reach, raises a presumption that the concealed information is unfavorable to him. The presumption, of course, is open to explanation. (*Londerholm v. Unified School District*, 199 Kan. 312, 430 P.2d 188; *Blackburn v. Colvin*, 191 Kan. 239, 380 P.2d 432; *In re Estate of Grisell*, 176 Kan. 209, 270 P.2d 285; and *Donley v. Amerada Petroleum Corp.*, 152 Kan. 518, 106 P.2d 652.)"

It is well established that the imposition of sanctions for failure to comply with discovery orders is a matter within the discretion of the trial court and that the decision to impose sanctions will not be overturned unless that discretion has been abused. *Lorson v. Falcon Coach, Inc.*, 214 Kan. 670, Syl. ¶ 3, 522 P.2d 449 (1974). In *State v. Warden*, 257 Kan. 94, 116, 891 P.2d 1074 (1995), we stated:

"Judicial discretion is abused if judicial action is arbitrary, fanciful, or unreasonable, which is another way of stating that discretion is abused only if no reasonable person would take the view adopted by the trial court. If reasonable persons could differ regarding the propriety of the action taken by the trial court, it cannot be said that the trial court abused its discretion. *State v. Brown*, 249 Kan. 698, Syl. ¶ 10, 823 P.2d 190 (1991)."

In *Lorson*, this court declared that "where there is evidence that a party has acted in deliberate disregard of reasonable and neces-

sary orders of a court, and where such party is afforded a hearing and an opportunity to offer evidence of excusable neglect, the imposition of a stringent sanction will not be disturbed." 214 Kan. 670, Syl. ¶ 3. Additional principles to aid in ascertaining whether the district court abused its discretion emerge from decisions involving the sanction of default judgment. The sanction should be designed to accomplish the objects of discovery rather than for the purpose of punishment. *Fields v. Stauffer Publications, Inc.*, 2 Kan. App. 2d 323, 328, 578 P.2d 1138, *rev. denied* 225 Kan. 843 (1978). Where the party failed to comply due to inability to do so rather than bad faith, a severe sanction such as dismissal or default probably would be inappropriate. *Vickers v. City of Kansas City*, 216 Kan. 84, Syl. ¶ 7, 531 P.2d 113 (1975). The object of the sanction should be to prevent the noncomplying party from profiting from its violation of the court's order and to protect the party which had requested discovery. *Fields*, 2 Kan. App. 2d at 328. In *Independent Mfg. Co. v. McGraw-Edison Co.*, 6 Kan. App. 2d 982, 987, 637 P.2d 431 (1981), the following tests were identified in determining whether the trial court has abused its discretion in granting default judgment for failure to comply with discovery orders: "(1) whether the discoverable material goes to a dispositive issue in the case; (2) whether alternative sanctions sufficient to protect the party seeking discovery were available; [and] (3) whether the requested information was merely cumulative or corroborative." See also *Wenger v. Wenger*, 239 Kan. 56, 716 P.2d 550 (1986) (counterclaims dismissed and default judgment entered for continued failure to make discovery); *Binyon v. Nesseth*, 231 Kan. 381, 646 P.2d 1043 (1982) (default judgment entered after repeated unsuccessful attempts to force defendant to comply with discovery orders).

The essence of discovery is a search for the truth. It is not a game but an enlightened procedure to encourage the resolution of cases based on merit and not on surprise and ambush. To that end, a party may be compelled to disclose relevant information, not privileged, within his or her knowledge or possession. Disclosure is required if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Here, the Court of Appeals assured itself that "Farm Bureau has quite possibly produced" all that was required but, on the other hand, recognized Farm Bureau's "almost inexplicable breaches of our discovery rules." It is the latter which is the basis of the trial court's judgment. It is Farm Bureau's deliberate and unwarranted breach of the discovery rules which makes it impossible to determine if Farm Bureau has in fact fully complied as ordered.

Hawkins points out that there were discrepancies between the contents of the original files which were marked at the deposition and the copies of documents which were produced and that, without the originals, he was unable to determine how closely the copies matched those in the deposition exhibits. We note that Farm Bureau blames the postal service for any problems with delivery and the paralegal for any errors occurring in its attorney's office. Such unsupported statements by counsel are not evidence of excusable neglect or good faith.

In the present case, ample opportunity was afforded Farm Bureau to show good faith or excusable neglect. Assessment of fines, an alternative sanction, had proved to be ineffective. Although Farm Bureau asserted that it had produced all the documents from the files of Ferry and Schwartz and thus was unable to produce anything more in order to comply with the court's order, it had created the circumstances which gave rise to the appearance of bad faith and had ignored the opportunities to prove otherwise. No other sanction has been suggested which would prevent Farm Bureau from profiting from its conduct and protect Hawkins. Hawkins' claim of bad faith and negligent representation of Dennis hinged on proof from the disputed material, the contents of the claims adjusters' files. The material was available from no other source. As in *Independent Mfg. Co.*, the trial court specifically warned Farm Bureau's counsel that failure to comply would result in imposition of the very sanctions which ultimately were imposed. See 6 Kan. App. 2d at 988. Moreover, in the present case, repeated warnings were given and repeated opportunities were afforded to an unheeding Farm Bureau.

After careful review of the record, we conclude that there is sufficient evidence to support a finding of a willful and deliberate

disregard by Farm Bureau for the discovery order of the district court. The district court's order striking Farm Bureau's nonwage garnishment answer and then entering default judgment was the last resort for closing protracted litigation which had been unduly prolonged by Farm Bureau's unwarranted and contemptuous conduct. The district court repeatedly advised Farm Bureau of the consequence of its persisting in failing to justify the apparent failure to produce relevant documents. We find no abuse of discretion in the imposition of sanctions by the district court.

Since we find no abuse of discretion, it is not necessary to address Hawkins' contention that payment into the court and disbursal to him of $19,190.21 in Farm Bureau funds constituted acquiescence by Farm Bureau in the default judgment.

Farm Bureau also challenges the district court's granting Hawkins attorney fees pursuant to K.S.A. 40-256, which provides in pertinent part:

"That in all actions hereafter commenced, in which judgment is rendered against any insurance company . . . any policy or certificate of any type or kind of insurance, if it appear from the evidence that such company, society or exchange has refused without just cause or excuse to pay the full amount of such loss, the court in rendering such judgment shall allow the plaintiff a reasonable sum as an attorney's fee for services in such action."

Pursuant to this statute, the district court ordered that judgment be entered against Farm Bureau in the amount of $319,436.81, which is $316,576.43 for attorney fees and $2,860.38 for costs "recognized by K.S.A. 60-2002." Material items which are allowable as costs by K.S.A. 60-2002 are the docket fee, reporters' charges for taking depositions used as evidence, and other costs authorized by other statutes, such as K.S.A. 40-256, to be taxed as costs.

In its conclusions of law, the district court wrote that "it is not necessary to resolve the issue of whether Farm Bureau was guilty of negligence or bad faith to determine whether Farm Bureau is liable for the judgment entered against Dennis" because Farm Bureau was in default after having its nonwage garnishment answer stricken. The issue, however, is germane to the award under K.S.A. 40-256.

The authority principally relied on by the district court in its analysis of Farm Bureau's conduct was *Smith v. Blackwell*, 14 Kan. App. 2d 158, 791 P.2d 1343 (1989), *rev. denied* 246 Kan. 769 (1990). The district court summarized the rules from that case as follows:

"Where an insurer fails to make a sufficient investigation or properly evaluate a claim; fails to notify the insured of offers to settle within policy limits; fails to give consideration to the insured's financial risk; fails to negotiate reasonably and go forward with settlement action, or make effective attempts to settle; and fails to recognize that its omissions and commissions make defense of a bad faith and negligence action for recovery of an excess verdict untenable, *Smith v. Blackwell, supra,* directs the trial court to find that the insurer refused without just cause or excuse to pay the full amount of such loss, and award attorney fees pursuant to K.S.A. 40-256."

The district court found that Farm Bureau twice failed to notify Dennis of policy limit offers of settlement from Hawkins and waited more than a year after determining that the value of Hawkins' claim exceeded the policy limit before attempting to negotiate a settlement. The court concluded:

"Farm Bureau was negligent and acted in bad faith in conducting the defense for its insured and its subsequent refusal to recognize its responsibility to respond to the excess amount of the judgment obtained against its insured was, and is, unfounded, frivolous, arbitrary and capricious and is tantamount to a refusal without just cause or excuse to pay the full amount of the loss."

Farm Bureau relies primarily on *Glenn v. Fleming*, 247 Kan. 296, 799 P.2d 79 (1990), in arguing that the evidence before the district court did not support its conclusion. Glenn prosecuted a garnishment action against Fleming's automobile liability insurer in an attempt to collect a judgment in excess of policy limits. In *Glenn*, the claim against the insurance company was based strictly on bad faith, rather than on negligence and bad faith, as in the present case. Thus, the court reviewed the evidence for "[s]omething more than mere error of judgment." 247 Kan. at 305-06. Summary judgment was granted for Fleming's liability insurer because bad faith liability could not be based on an unreasonable offer of settlement, and the offer was unreasonable because it was

premature, it was conditional, and it was "only open for two weeks." 247 Kan. at 307. This court agreed.

Likening the circumstances of the present case to those of *Glenn*, Farm Bureau contends that its rejection of the first offer extended by Hawkins to settle for the policy limit was justified because the offer was premature and unreasonable. That offer was transmitted by a letter dated July 31, 1989, from Hawkins' attorney to Phil Ferry, senior claims adjuster with Farm Bureau. The letter was written about 3½ months after the accident which necessitated amputation of Hawkins' left foot and lower leg. No suit had been filed. Hawkins' attorney was aware that Farm Bureau was disclaiming coverage. Hawkins offered to accept the policy limit for release of the car owner, Dennis, and Farm Bureau. In the concluding paragraph of the letter, it was stated: "If I do not hear from you within seven (7) days of the date hereof, I will assume that Farm Bureau takes the position that there is no coverage for this accident under any of it's [*sic*] policies and will proceed with suit against the culpable parties." Farm Bureau did not respond.

In this regard, the district court stated only that "Farm Bureau initially denied that it provided coverage to Dennis for the plaintiff's claim; it subsequently reversed that decision and began directing his defense without his knowledge and without informing him that it had changed its position with regard to coverage." In other words, the district court did not make a specific factual finding as to what the insurer's position was at the time of the settlement offer. It reasonably may be inferred from the district court's finding that Farm Bureau was denying coverage at the time of the July 1989 offer. This view is supported by the deposition testimony of Ferry, which was read into evidence, that he had been told by the local Farm Bureau agent within a few days of the accident that the premium on the policy had not been paid. Thus, when he received the letter offering settlement, he put it in his file and notified no one. The most significant finding made by the district court with regard to Farm Bureau's position at the time of the letter is that it was due to the insurer's failure to undertake an investigation in a timely and good faith manner that Farm Bureau did not know at the time of the settlement offer that there was cov-

erage. Thus, the district court viewed Farm Bureau's lack of response to the letter less as a matter of what the insurer knew than what the insurer should have known through the exercise of due diligence. This seems appropriate in the examination of the insurer's conduct for the purpose of adjudicating a claim of negligent and bad faith representation. Indeed, it may be appropriate in any examination of the insurer's representation. For example, in *Snodgrass v. State Farm Mut. Auto. Ins. Co.*, 15 Kan. App. 2d 153, 166, 804 P.2d 1012, *rev. denied* 248 Kan. 997 (1991), the Court of Appeals expressed the view that the insurer's duty may be suspended "when there is a good faith question as to whether there is coverage." The corollary of this observation would be that the insurer may not be relieved from its duty to the insured in the absence of a good faith question of coverage.

In the present case, the offer was made within a few months of the accident, before suit was filed, and, of course, before there had been any opportunity for discovery. In *Glenn*, Glenn's letter was unreasonable because he "offered to settle the case and dismiss Fleming from the suit for a payment of $25,000, receipt of the valves from the propane tank, and an opportunity to talk to Fleming informally." 247 Kan. at 299. In addition, the offer was extended only for 2 weeks. In the present case, the letter from Hawkins' counsel to Ferry offered to release the car owner, Dennis, and Farm Bureau for $100,000. The offer was open for 7 days. Farm Bureau argues that the 7-day restriction on a $100,000 demand is unreasonable on its face and as measured by the *Glenn* standard. Hawkins points out that his offer was not withdrawn after 7 days and that he did not file suit until October 5, 1989. A comparison does not seem productive, however, because we do not know how Glenn's letter was worded. We do not find Hawkins' offer to be unreasonable, but, even if we did, *Glenn* is not dispositive because there, the court concluded that the premature and unreasonable offer could not give rise to bad faith liability. and there was no allegation of negligence. Here, we must also consider whether Farm Bureau's conduct in the circumstances was negligent.

Farm Bureau argues that resolution of this entire issue rests on the court's characterization of the July 1989 offer. It argues that a

finding that it is not blameworthy for not responding to the offer frees Farm Bureau of liability "because there can be no showing of prejudice to Mr. Dennis for failure to settle." Farm Bureau suggests that, in the absence of a reasonable offer to settle, "there is no causal connection between the insurer's conduct and the fact that the judgment was in excess of the limit." Farm Bureau cites *Snodgrass* as authority. In fact, *Snodgrass* does stand for the proposition that there must be a causal link between the insurer's conduct and the excess judgment against the insured, and the conduct in that case was rejection of a settlement offer, but it is clearly stated in the opinion that that is only one of the circumstances in which an insurer may be liable for an excess judgment. 15 Kan. App. 2d at 165.

In the present case, the district court found that Farm Bureau was negligent in its handling of the claim in all the following particulars:

"a. Farm Bureau became aware of the claim in April of 1989 and delayed until at least July 7, 1989 to commence an investigation to determine whether there was coverage for the loss. A timely and good faith investigation would have revealed there was coverage;

"b. After reversing its initial decision not to provide coverage it did not inform Dennis of that decision;

"c. It did not inform Dennis that an offer to settle the claim for $100,000 had been made;

"d. Its claim representatives ignored, and made no attempt to investigate significant discrepancies between Dennis' version of the accident given to Phillip Ferry in a statement at the Stanton County Jail, and statements Dennis had given to investigating traffic officers at or near the time of the accident.

"e. Between April 16, 1989 and June 12, 1991 Farm Bureau failed to make any attempt to negotiate a settlement of the claim, and failed to conduct an investigation adequate to permit its claim representatives who were responsible for the ultimate evaluation of the claim to make an informed evaluation;

"f. Farm Bureau made no attempt to encourage settlement negotiations until June 12, 1991;

"g. Farm Bureau failed to advise Dennis of plaintiff's proposal to allow him to confess judgment in settlement of the claims against him."

Farm Bureau attempts to explain delay in attempting settlement negotiations by asserting that there were genuine questions about Dennis' liability. Those questions were based on Hawkins' "oper-

ating his motorcycle within three feet of the centerline" and having a blood alcohol level of 0.09 percent. There is no question that Dennis was driving his vehicle on the wrong side of the road. It is absurd, therefore, to suggest that Hawkins' driving 3 feet inside his own lane equalizes Dennis' fault. Farm Bureau seems to put some stock in Dennis' statement to Ferry that he had nearly completed passing a truck and was trying to get back in his lane when he hit Hawkins. The district court, however, viewed Farm Bureau's reliance on the more favorable statement as another instance of negligent conduct. The district court was of the view that it was Farm Bureau's duty to investigate the discrepancies between Dennis' statement to Ferry and his statement to investigating officers closer to the time of the accident. With regard to the blood alcohol level, the district court found that Dennis' blood alcohol level was reported to be 0.15 percent, higher than Hawkins' and higher than the legal limit for driving.

Farm Bureau attempts to shift its failure to maintain communications with Dennis to Dennis' failure to maintain contact with it. Farm Bureau asserts that it did not know how to get in touch with Dennis. There is no support for this assertion in the record on appeal.

In addition to contending that it did not refuse without just cause or excuse to pay the full amount of the judgment against Dennis so that an award of costs, including attorney fees, was improper under K.S.A. 40-256, Farm Bureau argues that the amount of the fee award is unreasonable. As a consequence of the default judgment being entered in his favor in the garnishment proceeding, Hawkins was awarded $474,864.65, which represented the amount of the unpaid personal injury judgment plus interest. Under K.S.A. 40-256, he was awarded the costs of the action. These included $2,860.38 pursuant to K.S.A. 60-2002 and attorney fees of $316,576.43. Farm Bureau does not complain about the $2,860.38. With regard to the attorney fees, based on Hawkins' counsel's report of nearly 522 hours expended on prosecution of the action to recover the excess judgment, Farm Bureau calculates that the fee rate was more than $600 per hour. Farm Bureau contrasts that figure with a rate of $85 per hour which was approved in *Evans v.*

*Provident Life & Accident Ins. Co.*, 249 Kan. 248, 263, 815 P.2d 550 (1991).

We find nothing in the record to indicate that the fee award was computed on an hourly basis. The testimony of Hawkins was that he contracted with his attorney for representation in the action to recover the excess judgment on a 40 percent contingency basis. In his supplemental brief, Hawkins contends that the award was proper because it placed him "in the position he would have been in but for Farm Bureau's egregious conduct." This seems to mean that Hawkins would have received $474,864.65 if Farm Bureau had paid the personal injury judgment, but the truth lies elsewhere. Hawkins' recovery in the personal injury suit, including the excess, presumably would have been subject to the 33⅓ percent contingency fee basis for which he contracted in that action. As the award stands in the garnishment proceeding, Hawkins' recovery is not reduced by the attorney fee. That is proper under K.S.A. 40-256, but it shows that the contention by Hawkins is not accurate.

As noted by the Court of Appeals, the trial court did not explain how it computed the attorney fees. Hawkins suggests that the award is the difference between $474,864.65 and that amount divided by 0.6. If that is how the district court computed the award, and it appears to be, there is no explanation for it. If the district court's intention was to award the fee for which Hawkins was contractually obliged, the award should have been a straightforward 40 percent of $474,864.65 or 40 percent of $474,864.65 plus $2,860.38. Forty percent of the amount of the default judgment is $189,945.86. Forty percent of the total of the default judgment plus the award of costs (not including attorney fees) is $191,090.01.

The reasonable value of attorney fees lies within the sound discretion of the district court. Here, based upon the record before us, we determine that the district court abused its discretion in setting the amount of the attorney fees. This court may, in the interest of justice, "fix such fees when in disagreement with the views of the trial court." *City of Wichita v. B G Products, Inc.*, 252 Kan. 367, Syl. ¶ 4, 845 P.2d 649 (1993). We do not agree with the trial court and find the award for attorney fees to be excessive. Considering, among other things, the contingency fee agreement,

the amount of the recovery, and the time involved in this case, we conclude $189,945.86 is a reasonable sum as an attorney fee.

The decision of the Court of Appeals is reversed. The judgment of the district court is modified by reducing the attorney fee award to $189,945.86. In all other respects, the judgment of the district court is affirmed.

ABBOTT and LARSON, JJ., not participating.

MARVIN W. MEYER, Judge Retired, assigned.