No. 47,232

JIM LORSON, *Appellee*, v. FALCON COACH, INC., ED McDONALD, VERN ALTES and LARRY JEFFERS, *Appellants*.

(522 P. 2d 449)

Opinion filed May 11, 1974.

*Raymond L. Dahlberg*, of Turner, Chartered, of Great Bend, argued the cause, and *Lee Turner*, of the same firm, was with him on the brief for the appellants.

*John M. Russell*, of Great Bend, argued the cause, and was on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: The defendants-appellants, Falcon Coach Inc., Ed McDonald and Larry Jeffers, appeal from a default judgment rendered against them under the provisions of K. S. A. 60-237 (*b*) (2) (III), [now K. S. A. 1973 Supp. 60-237 (*b*) (2) (C).]. Judgment was not rendered against defendant Vern Altes.

The tortuous course of this litigation began on June 25, 1971, when plaintiff-appellee, Jim Lorson, filed his petition praying for damages resulting from circumstances which plaintiff claims amounted to a breach by defendants of an alleged employment contract.

The petition was drawn in the form of a recitation of facts. Plaintiff alleged that he was contacted by a representative of Falcon and, on June 14, 1971, went to Great Bend for a job interview with company people. On arrival in Great Bend, Lorson discussed employment with defendants Jeffers and Altes, employees of Falcon. Following that discussion, Lorson was given an airline ticket to Denver to fly there for an interview with Ed McDonald, chairman of the board of directors of the Falcon Company. Plaintiff alleges that he flew to Denver on June 15, 1971, and that the interview with McDonald resulted in a job offer of $250 per week, with the possibility of a stock option as an added benefit. Plaintiff further alleged that McDonald told him to look for a house in Great Bend. Plaintiff returned to Great Bend on June 16, 1971, informed Altes that he had been hired and was given a Falcon check for $154 by Altes to cover his travel expenses. On the same day plaintiff found and rented a house in Great Bend and then returned to his home in Denison, Iowa, where he made arrangements with Allied Van Lines to move his furniture to Great Bend.

When plaintiff returned to Great Bend on June 18, 1971, he was first informed by Mrs. Jeffers and then by defendant McDonald that he did not have a job with Falcon and that the company would not pay for the moving of his household goods. Plaintiff further alleged that the van transporting his goods stopped in Abilene, Kansas where some furniture owned by plaintiff's mother was to be added to the load and that Falcon contacted the van driver in Abilene informing him Falcon would not pay the moving expenses, but plaintiff alleges upon certain representations being made to the movers the moving van proceeded and arrived in Great Bend on June 19, 1971. Falcon representatives refused to pay any part of the moving costs and as

a result the movers refused to unload plaintiff's furniture in Great Bend, but took it on to Hutchinson where it was stored with the City Transfer Moving and Storage Company.

Plaintiff prayed for damages in the amount of $930, representing moving costs and in addition storage costs and other costs incidental to keeping his family, consisting of eight children, in Great Bend. Plaintiff further prayed for the recovery of $250 per week pursuant to the contract allegedly entered into with McDonald and for $150,000.00 punitive damages for pain, suffering, humiliation and detriment suffered by plaintiff and his family.

Plaintiff's petition was met by a request for admissions filed by defendant Falcon on July 26, 1971. At this juncture defendants McDonald, Altes and Falcon were represented by Larry Kopke of Great Bend and defendant Jeffers was represented by present counsel.

On September 8, 1971, Falcon filed a motion for partial summary judgment which was heard on September 30 and on November 17, 1971, the trial court filed its memorandum decision. The trial court sustained Falcon's motion as to punitive damages, but overruled it in other respects finding that a cause of action was stated in plaintiff's petition. The trial court's ruling that a cause of action was stated is challenged by defendants in this appeal.

On January 21, 1972, plaintiff filed an amended petition, City Transfer Moving and Storage Company was added as a party defendant and plaintiff's claim for wages was amended to a demand for the sum of $250 per week in the nature of salary from and after June 21, 1971, until the conclusion of the litigation.

On May 30, 1972, defendants' present counsel entered an appearance as counsel for defendants Falcon, McDonald and Altes replacing previous counsel Kopke.

On June 17, 1972, defendants filed an answer to plaintiff's amended petition alleging inter alia that plaintiff had practiced fraud upon defendants and had misrepresented his past employment record. Defendants also filed a counterclaim alleging plaintiff had instituted the action for the purpose of harassing defendants with the expectation of receiving a nuisance settlement and that plaintiff had engaged in similar tactics with other employers. Defendants prayed for judgment for $10,000.00 damages on their counterclaim.

On June 29, 1972, plaintiff filed a motion to reinstate his claim for punitive damages and in support thereon alleged that since the date of the court's decision on the motion for summary judgment,

September 30, 1971, plaintiff had repeatedly attempted to have the case set for trial, but due to the delay and dilatory actions of defendants, and subsequent change of attorneys, plaintiff had been repeatedly denied an opportunity to present his case to the court. Plaintiff further alleged that because of the delay he had been substantially damaged and that as a result he should be allowed to reinstate his prayer for punitive damages.

On August 30, 1972, plaintiff served defendants with interrogatories concerning allegations made in defendants' counterclaim. It is defendants' failure to serve proper and timely answers to these interrogatories which became the basis for plaintiff's motion upon which the default judgment appealed from was entered.

On September 18, 1972, defendants filed a motion seeking a twenty day extension of time in which to answer plaintiff's interrogatories. On October 19, 1972, the trial court heard plaintiff's motion to reinstate his claim for punitive damages and defendants' motion for an additional twenty days in which to answer plaintiff's interrogatories. The court sustained plaintiff's motion to reinstate his claim for punitive damages and concerning defendants' motion for extension of time in which to answer interrogatories ruled as follows:

"The Court thereupon takes up the Motion for Additional Time to Answer Interrogatories and having heard the evidence and being fully advised in the premises finds that the Defendants should have twenty (20) days from this date in which to answer the interrogatories forwarded to said Defendants on August 30, 1972."

The twenty day extension granted on October 19 expired on November 8, 1972. On December 1, 1972, plaintiff filed a motion for default judgment pursuant to 60-237 (*b*) (2) (III). In his motion plaintiff recited the time intervals following August 30, 1972, through November 8, 1972, and alleged that defendants had refused to answer the interrogatories. The motion was noticed for hearing on December 6, 1972, but as plaintiff says in his brief:

". . . [C]ounsel, Turner, appeared not for any of the Defendants and the Court, feeling the matter worthy of hearing, continued the same and notice was again sent by Plaintiff to Defendants, setting this matter for January 4, 1973."

The matter came on for hearing on January 4, 1973. Plaintiff's counsel recited the chronology of events following August 30, 1972, and at this point the following colloquy took place between the court and defendants' counsel:

"Mr. Dahlberg: Well, I have the interrogatories here with me. Counsel for the plaintiff knows the circumstances and what the delay was. We had lost the interrogatories or our client in Denver had and we have some distance relative to communications, and he lost them or misplaced them and this is why we had to secure an additional set of interrogatories.

"The Court: Well, the thing that bothers me, for a simple case that this should be it has just been dragging on and on and on and this plaintiff, we need to give him his day in Court or give him judgment or dispose of the matter. It has been on file for a year and a half and there is no reason for the thing to keep dragging on and on like this.

"Mr. Dahlberg: Well, I won't deny that we were neglectful.

"The Court: You have the interrogatories answered and so on?

"Mr. Dahlberg: Yes, they have been answered and signed. I won't deny that we have been neglectful in the sense that our client had misplaced these and this was contributing to the delay but I don't think it is sufficient that it warrants the severe imposition of granting summary judgment."

The hearing concluded with the trial court's announcement that it was taking the matter under advisement, but that in the meantime defendants' counsel should get the interrogatories on file.

On January 8, 1973, the trial court announced its decision in a memorandum opinion which reads in part as follows:

"During the course of the argument, the Attorney for Falcon Coach Company, Inc., Ed McDonald and Vern Altes advised the Court that they would on that date file the answers to the interrogatories in question and that the Court thereafter could set a time limit for other discovery and set the matter down for Pre-Trial and otherwise proceed with the matter.

"As of January the 8th the only answers to Plaintiff's interrogatories that have been filed with the court, are the answers of the Defendant Vern Altes, as to this Defendant, the Plaintiff's motion for judgment under the provisions of K. S. A. 60-237 (b) (2) (iii) is overruled.

"As to the Defendant, Falcon Coach Company, Inc., and the Defendant Ed McDonald, this Court is hereby sustaining the Plaintiff's motion for judgment under the foregoing statutory provisions for the following reasons:

"(a) The record herein shows that on August 30, 1972, the Plaintiff duly served the interrogatories above mentioned on the Defendants; that the Defendants failed to answer the interrogatories within the prescribed time and the Court, on September 14, 1972, granted an additional twenty (20) days to file answers to interrogatories, these twenty (20) days to run from October 19, 1972. There has still been no compliance with this Court's order.

"This Court believes that it is charged with the just and speedy determination of litigation; this Plaintiff, as provided under K. S. A. 60-101. This Plaintiff has had this litigation in process since June 25, 1971. The matter started with different counsel for the Defendants involved herein, however, the present counsel have been in this litigation for some period of time and the Court believes that any delay cannot be predicated on their lack of familiarity with the file or its contents."

Without having heard any evidence on damages, other than plaintiff's references to moving costs in his answers to defendants' interrogatories, the trial court then proceeded to enter judgment substantially as prayed for in plaintiff's amended petition—$930 for moving costs; $2000 for storage; $250 per week until the matter is satisfied; and $5000 punitive damages. Plaintiff did not request the court to hear additional evidence on damages.

On January 15, 1973, defendants filed a motion to set aside the judgment alleging numerous grounds. The motion was heard on February 7, 1973, at which time, the record reflects, counsel for defendants made an extensive argument including a statement of explanation of their delay. On March 28, 1973, the trial court announced its decision generally affirming its previous judgment with some modifications as follows:

". . . The Court in re-considering this matter finds that its Memorandum of Decision of January 8, 1973, should be modified as follows:

"a. The Court finds that the punitive damages allowed should not have been allowed in considering the matter at this time, and therefore the Court is striking these from the judgment granted.

"b. The Court finds that the actual damages awarded to Plaintiff should be amended as follows:

"1) That Plaintiff be awarded the sum of Twelve Thousand Dollars ($12,-000.00) as wages due, covering the period from June 21, 1971, until May 21, 1972, when the Court finds from the discovery deposition of Plaintiff that he became employed; that the judgment for moving and storage granted to Plaintiff in the Court's previous Memorandum of Decision of January 8, 1973, be and the same is hereby reaffirmed."

Thereafter this appeal was perfected.

Defendants specify three points of error on appeal. The first of which is that the trial court lacked authority to grant the default judgment. Defendants' argument on this point is technical in nature; the gist is that 60-237 (b) (2) (III) authorizes the sanction of default judgment only after the court has entered an order under 60-237 (a).

K. S. A. 60-237 entitled "Refusal to make discovery" is substantially the same as Federal rule No. 37 (Vol. 8 Wright & Miller, Federal Practice and Procedure, Civil). It provides generally for sanctions against parties or persons unjustifiably resisting discovery. Subsection (a) authorizes an aggrieved party to make application to the court for an order compelling a party to respond to interrogatories or questions propounded in a deposition. Subsections (b), (c) and (d) provide sanctions which may be applied under

the conditions therein set out for the enforcement of the rules of discovery enumerated in subsection (a).

Defendants say that in the instant case no application or motion was made under 60-237 (a) and, thus, plaintiff's motion to invoke sanctions under 60-237 (b) (2) (III) was premature. While the record reflects that plaintiff did not make application to this court under 60-237 (a) for an order compelling an answer by defendants, the court did, in fact, make an order on defendants' motion for extension on October 30, 1972. Defendants cannot complain that they did not have notice of the court's order directing answers within twenty days since defendants filed the motion for extension themselves. Subsection (d) of 60-237 deals specifically with wilfully failing to answer interrogatories and authorizes the court, on motion and notice, to *inter alia* enter a judgment by default against the defaulting party. We believe the court's findings enumerated above are tantamount to a finding of wilful failure on the part of defendants. At this point, we pause to note that the word "wilfully" has been deleted from 60-237 (d) in the extensive amendments to 60-237 which became effective January 1, 1973. While it appears that plaintiff's motion could have been lodged under 60-237 (d), the motion filed, specifically fingered 60-237 (b) (2) (III) and we base our decision on that subsection. Subsection (b) of 60-237 sets out two categories of consequences for a party's failure to comply with an order under subsection (a), they are (b) (1) "contempt" and (b) (2) "other consequences." Subsection (b) (2) provides *inter alia* that the failure of a party to obey an order under subsection (a) requiring him "to answer" designated questions subjects him to any of the sanctions enumerated in subsections (b) (2) (I), (II), (III) and (IV). Subsection (b) (2) (III) reads:

"An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party."

In the instant case the order of October 30, 1971, falls within the ambit of subsection (a), thus, the trial court, after proper notice and hearing, was authorized to impose sanctions under (b) (2) (III) including the entering of a default judgment.

We turn next to defendants' second contention that the trial court acted in an arbitrary manner and abused its discretion in

entering the instant judgment. Defendants submit no authorities in their brief in support of their contention. They concede this case has taken too much time, but attempt to fix the cause of the delay on the fault of plaintiff or to balance off the claimed derelictions of plaintiff against their own neglect. Defendants say the court's decision is both insupportable on the law and inequitable on the facts of the case.

In its memorandum decision the trial court in support of its judgment cites two cases in which a default judgment had been entered by the trial court as a sanction under 60-237 (b) (2) (III). The two cases are *Ronnau v. Caravan International Corporation,* 205 Kan. 154, 468 P. 2d 118; and *Williams v. Consolidated Investors, Inc.,* 205 Kan. 728, 472 P. 2d 248, neither is directly in point with the issues presented here. In *Ronnau* the default judgment was not attacked. The issues on appeal involved garnishment proceedings instituted to collect on the judgment. In *Williams* the judgment in question was entered for failure of defendant to produce documents for inspection. On appeal this court reversed on the grounds that the documents in question were in the possession of a third party and defendant did not have a legal right to enforce a demand for possession and control so as to comply with a production order.

While the precise question in the *Williams* case concerned the failure to comply with a production order rather than failure to respond to interrogatories what was said therein concerning the sanction of a default judgment under 60-237 (b) (2) is pertinent to the issue here.

In *Williams* we pointed out that 60-237 is identical to Rule No. 37 of the Federal Rules of Civil Procedure and examined a number of federal decisions dealing with the rule. With respect to penalties by 60-237 (b) (2) for failure to comply with a production order, we had this to say:

"The penalties permitted by 60-237 (b) (2) are not to be imposed for the failure to comply with a production order in the absence of an ability to produce, where a party's failure to produce is shown to be due to inability fostered neither by his own conduct nor by the attendant circumstances of the case. (*Read v. Ulmer,* 308 F. 2d 915.) While 60-237 (b) (2) applies to all failures to comply, either willful or not, the presence or lack of good faith in the parties is relevant to the orders which should be given and the severity of the sanctions imposed. (*B. F. Goodrich Tire Company v. Lyster,* 328 F. 2d 411, 415.) The sanction of judgment by default for failure to comply with a production order is the most severe sanction which the court may apply, and its use must be tempered by the careful exercise of judicial discretion to assure that its impo-

sition is merited. However, where a party has acted in willful and deliberate disregard of reasonable and necessary orders of the court and the efficient administration of justice, the application of a stringent sanction is fully justified and should not be disturbed. (*Trans World Airlines, Inc. v. Hughes*, 332 F. 2d 602.). . . . (p. 733.)

Numerous federal cases dealing with discretion of the court in imposing sanctions under the rule are collected in Vol. 8 Wright & Miller, Federal Practice and Procedure, Civil, § 2284, pp. 764-772. In general, decisions indicate that discretion though broad is not limitless and that the imposition of sanctions is always subject to appellate review and reversal if abuse of discretion is found. In testing the severity of the sanction imposed in the framework of abuse of discretion the good faith of a party is considered in many decisions. In the *Williams* case we observed:

"The record amply demonstrates a *good faith* attempt by the defendants sufficient to excuse them from the sanction of a default judgment. . . ." (p. 734.) (Emphasis supplied.)

Returning to the instant case, we examine defendants' conduct in the light of a good faith test. The trial court noted that defendant Altes' answers to interrogatories were notarized on September 25, 1972, yet on October 19, 1972, counsel for defendants requested additional time to answer interrogatories for all defendants. Counsel for defendants in a plea for fairness claim that the final delay in January was occasioned only by the excusable neglect of the notary to sign the answers. This argument might be acceptable if the delay had occurred in the immediate vicinity of the twenty day extension. This is not the case. The twenty day extension expired on November 8, 1972. The failure to obtain the notary's signature occurred over a month and a half later in early January of 1973. Absolutely, no excuse is offered for the delay between November 20 and January 4. Based on defendants' prior request for extension of time and the absence of excuse for delay beyond the extension date, it appears to us the trial court had ample reason to conclude the delay was wilful and that defendants' conduct showed a lack of good faith.

In the instant case defendants were offered a full hearing on January 4, 1973, with full opportunity to demonstrate good faith or show acceptable excuses for the delay. On February 7, 1973, on the motion to set aside judgment the court again heard whatever defendants had to offer. Under such circumstances the court cannot

be said to have acted arbitrarily. In affirming a default judgment rendered for failure to answer interrogatories in *Weiss Noodle Company v. Aprile,* (United States Court of Appeals, [6th Cir. 1959]), 272 F. 2d 923, the appellate court emphasized the fact that the trial court had held a hearing and had an opportunity to hear excuses.

While the entry of judgment is a drastic remedy, we cannot say, under the facts and circumstances shown by the record here, that the trial court abused its discretion.

For their third point on appeal defendants attack the trial court's ruling on their motion for partial summary judgment entered on November 17, 1971. Defendants contend the judgment is erroneous as to damages for loss of wages since breach of an oral contract of employment which is for an indefinite period of time does not state a cause of action. The point is well taken. In *May v. Santa Fe Trail Transportation Co.,* 189 Kan. 419, 370 P. 2d 390, we held:

"In the absence of a contract, express or implied, between an employee and his employer covering the duration of employment, the employment is terminable at the will of either party, and the employee states no cause of action for breach of contract by alleging that he had been discharged." (Syl. ¶ 1.)

Our holding in *May* echoed a previous holding in *Swart v. Huston,* 154 Kan. 182, 117 P. 2d 576. Our decisions in this regard follow the general rule stated in 53 Am. Jur. 2d, Master and Servant, § 43:

"When the employment is not for a definite term and there is no contractual or statutory restriction upon the right of discharge, an employer may lawfully discharge an employee whenever and for whatever cause he chooses, without incurring liability. . . ." (pp. 117, 118.)

In considering a motion for summary judgment under K. S. A. 60-256 or a motion to dismiss under K. S. A. 1973 Supp. 60-212 (*c*) pleadings will be given a liberal construction in favor of the party against whom the motion is directed. (*Robertson v. McCune,* 205 Kan. 696, 472 P. 2d 215; and *Price, Administrator v. Holmes,* 198 Kan. 100, 422 P. 2d 976.) An examination of plaintiff's petition in the light of the rule quoted reveals no allegations of an express contract nor of facts from which a contract might be implied that could be construed as a contract for a definite period of employment. Therefore, the judgment as to damages for loss of wages must be set aside. However, applying the same rule, we believe the allegations of plaintiff's petition are sufficient to state a cause of action for damages for the breach of a quasi contract based upon plaintiff's reliance to his detriment on defendants' promise of employ-

ment and, thus, incurring moving expenses and storage costs. (*Minnesota Avenue, Inc. v. Automatic Packagers, Inc.*, 211 Kan. 461, 507 P. 2d 268.) For the reasons stated the judgment is affirmed as to storage and moving costs.

Accordingly the judgment is affirmed as modified.