UNITED STATES COURT OF APPEALS
TENTH CIRCUIT

**Filed 2/16/96**

VICKY GOOCH,

    Plaintiff - Appellant,

    v.

MEADOWBROOK HEALTHCARE
SERVICES OF FLORIDA, INC.;
MEADOWBROOK MANAGEMENT
COMPANY, INC.; and DIANE
LANDRATH-SCHMIDT,

    Defendants - Appellees.

No. 95-3075

(D.C. No. 93-CV-1388)

(District of Kansas)

---

ORDER AND JUDGMENT[*]

---

Before ANDERSON, McKAY and JONES,[**] Circuit Judges.

---

Plaintiff Vicky Gooch was employed by the Defendants Meadowbrook Healthcare

Services of Florida, Inc., and Meadowbrook Management Company, Inc., as the facility

administrator for their Sedgwick Convalescent Center. Defendant Diane Landrath-

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] Honorable Nathaniel R. Jones, Senior Circuit Judge of the United States Court of Appeals for the Sixth Circuit, sitting by designation.

Schmidt, a regional vice president, was Plaintiff's supervisor during the time Plaintiff worked for the Meadowbrook Defendants. Plaintiff was terminated by Defendants while on maternity leave. Plaintiff filed suit alleging that the Defendants discriminated against her on the basis of her gender and pregnancy in terminating her employment and that Defendants breached an alleged employment contract. The district court granted the Defendants summary judgment as to all of Plaintiff's claims.

Plaintiff raises three issues on appeal: (1) whether the Plaintiff presented a prima facie case of gender or maternity discrimination and whether the Defendants' reasons for termination were pretextual; (2) whether the trial court improperly decided disputed facts in favor of the moving party in granting summary judgment to the Defendants; and, (3) whether Plaintiff had a contract with the Defendants.

Our review of summary judgment is de novo. Jensen v. Redevelopment Agency of Sandy City, 998 F.2d 1550, 1555 (10th Cir. 1993). In our review, we "must view the evidence presented through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The party opposing summary judgment must identify sufficient evidence that would require submission of the case to a jury. Anderson, 477 U.S. at 249-50. An issue of fact is "genuine" if the evidence is significantly probative; an issue of fact is "material" if proof of it might affect the outcome of the lawsuit. Id. at 248-49. The findings of the trial judge in a Title VII case, however, are judged under a clearly erroneous standard. Long v. Laramie County Community College Dist., 840 F.2d 743, 749 (10th Cir. 1988) (citing Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985)).

**Plaintiff's Discrimination Claims**

A plaintiff may prove disparate treatment by using either direct or indirect evidence. If indirect evidence is used, then we apply the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973), and Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-56 (1981). The plaintiff bears the initial burden of establishing a prima facie case of discrimination in Title VII actions. Green, 411 U.S. at 802. A presumption of discrimination arises once the plaintiff establishes a prima facie case, but the defendant can rebut the presumption by producing some evidence that it had legitimate, nondiscriminatory reasons for its action. Id.; Sorensen v. City of Aurora, 984 F.2d 349, 352 (10th Cir. 1993). "At the summary judgment stage, it then becomes the plaintiff's burden to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged

3

action is pretextual--i.e. unworthy of belief." Randle v. City of Aurora, 69 F.3d 441, 451 (10th Cir. 1995). "[T]he Title VII plaintiff at all times bears the 'ultimate burden of persuasion.'" St. Mary's Honor Ctr. v. Hicks, 113 S. Ct. 2742, 2749 (1993).

In establishing a prima facie case of disparate treatment gender discrimination, Ms. Gooch must show: (1) she belonged to the protected class; (2) she was adversely affected by the employer's action; (3) she was qualified for the position; and, (4) she was treated less favorably than her male counterparts. Cole v. Ruidoso Mun. Schools, 43 F.3d 1373, 1380 (10th Cir. 1994). The district court found that Ms. Gooch failed to establish a prima facie case of gender discrimination. We disagree. Ms. Gooch belongs to a protected class by being female, and she was obviously adversely affected by being terminated. She has provided sufficient evidence of her qualifications: she was licensed and she had a favorable prior work history in the same position at another institution. To show disparate treatment, Plaintiff points to the fact that she was replaced by a male. The Supreme Court explained in Burdine, "The burden of establishing a prima facie case of disparate treatment is not onerous." 450 U.S. at 253. The district court was clearly erroneous in failing to find that Plaintiff established a prima facie case of disparate treatment gender discrimination.

The district court correctly found, however, that even if Plaintiff had presented a

4

prima facie case, the Defendants in this case rebutted the presumption of discrimination by producing some evidence that it had legitimate, nondiscriminatory business reasons for its treatment of Plaintiff. Defendants provided an affidavit stating that the job was offered to and turned down by a female before it was offered to a male. [Appellees' App. at 269]. Defendants also provided evidence that they discharged Plaintiff because of her mismanagement of the Defendants' facility. [Appellees' App. at 162]. The record is replete with evidence of mismanagement, culminating with a threat by the State of Kansas not to relicense the Defendants' facility because of its deficiencies.

After the employer offers a facially nondiscriminatory reason for its employment decision at the summary judgment stage, the burden shifts to the plaintiff to show that there is a genuine dispute of material fact as to whether the employer's proffered reason was pretextual. Randle, 69 F.3d at 451. Plaintiff did not rebut Defendants' claim that a female turned down the job; Plaintiff only stated that she has no knowledge as to whether a female turned down the position. Plaintiff provided evidence that the deficiencies at Defendants' facility were beyond her control, but she failed to go the next step by showing that a material fact exists as to whether Defendants' reasons were pretextual. While it is disputable whether the deficiencies were Plaintiff's fault, she has not shown that there is a genuine issue of material fact that the employer's proffered reasons were

5

pretextual.[1]  Inherent in the allocation of Plaintiff's burden is evidence demonstrating a causal connection between the conduct for which Plaintiff seeks relief and her protected status under Title VII.  Burdine, 450 U.S. at 256.  Plaintiff failed to come forward with facts showing a genuine dispute of material fact by which a jury could find by a preponderance of the evidence that she was treated differently because of her gender.

Plaintiff attempted to establish disparate treatment by showing how the Defendants have treated a similarly situated male employee in another incident.  Ms. Gooch has stated in an affidavit that Iraj Alipour, a male administrator at a Meadowbrook facility in Wichita, was not terminated in 1994 after being cited in a survey for deficiencies more serious than those at the Sedgwick facility.  [Appellant App. at 297].  Citing a hostile work environment discrimination case, Purrington v. University of Utah, 996 F.2d 1025, 1029 (10th Cir. 1993), Plaintiff asserts that incidents involving other employees are relevant to whether discrimination has occurred.  In order to prove disparate treatment, a plaintiff must show more than accidental or sporadic incidents of discrimination; she must show that "discrimination was the company's standard operating procedure--the regular rather than the unusual practice."  International Bhd. of Teamsters v. United States, 431

---

[1]  As we noted in Randle, a plaintiff can rebut the defendant's nondiscriminatory reason on summary judgment by showing that the defendant's reason is unworthy of belief.  69 F.3d at 452 n.17.

U.S. 324, 336 & n.16 (1977). While Plaintiff is correct that other incidents of discrimination are relevant, Plaintiff failed to show a genuine dispute of material fact existed in regard to whether the Defendants' regular practice was to treat women disparately. Thus, the district court correctly granted the Defendants summary judgment.

Plaintiff claims the district court clearly erred in holding that she failed to set forth a prima facie case for pregnancy discrimination. The Pregnancy Discrimination Act amended Title VII to bring the condition of pregnancy within the definition of sex discrimination. A pregnancy discrimination claim is analyzed the same as other Title VII claims. EEOC v. Ackerman, Hood & McQueen, Inc., 956 F.2d 944, 947 (10th Cir.), cert. denied, 506 U.S. 817 (1992).

As with Plaintiff's gender discrimination claim, Ms. Gooch can easily establish the first three elements of a prima facie case for pregnancy discrimination: She belongs to a protected class by being pregnant; she was obviously adversely affected by being terminated; and, Ms. Gooch provided sufficient evidence of her qualifications. The fact that Plaintiff was terminated while on maternity leave completed her prima facie case of pregnancy discrimination.

As with Plaintiff's gender discrimination claim, Defendants rebutted the

presumption of pregnancy discrimination by producing some evidence that they discharged the Plaintiff because of her mismanagement. Plaintiff, who began her maternity leave in mid-August 1992, bases her claim on the mere fact that she happened to be on maternity leave when she was terminated. The decision to terminate Plaintiff was the result of a meeting on September 24, 1992, between Mr. L. P. Herzog, President and Chief Operations Officer of Meadowbrook, Mr. Jeff Pudwill, Meadowbrook director of human resources, Ms. Maddy D'Heilly, director of professional resources, and Ms. Landrath-Schmidt. At the meeting, they concluded that the continued employment of Plaintiff posed an unacceptable risk to the health and safety of the residents and to the license of the Sedgwick facility. Plaintiff was notified by letter dated September 24, 1992, of the termination of her employment. The letter stated that she was being terminated based on "1) Condition of the facility on August 1, 1992; 2) State Survey deficiencies of 1991; and 3) State survey results of 1992." [Appellant's Br. at 12]. Plaintiff failed to show that there is a genuine dispute of material fact that the Defendants' reasons were a pretext for discrimination. Plaintiff has provided no evidence that she was treated less favorably than another, nonpregnant employee under similar conditions.

Plaintiff argues that the trial court ignored the affidavit of the nurse at the Sedgwick facility who alleges that she was denied a promotion because of her pregnancy.

8

Ms. Gooch was terminated in September 1992, while the pregnancy discrimination alleged in the affidavit occurred in November 1994. The 1994 incident occurred so long after Ms. Gooch's termination that it is not relevant to the Defendants' treatment of Ms. Gooch. The decision to terminate Plaintiff was made by Mr. Herzog, Mr. Pudwill, Ms. D'Heilly, and Ms. Landrath-Schmidt in 1992; whereas the 1994 incident of purported pregnancy discrimination was at the hands of Plaintiff's male replacement--a person who was not employed by Defendants at the time of Plaintiff's termination. Plaintiff did not present evidence showing that a genuine dispute of material fact exists by which a jury could find by a preponderance of the evidence that she was treated less favorably than a nonpregnant employee under similar conditions.[2]

**Disputed Facts Decided by the Trial Court**

Plaintiff asserts that the trial court violated the standard for summary judgment by deciding controverted facts in favor of the Defendants, instead of in favor of the party opposing the motion.

---

[2] The Pregnancy Discrimination Act "makes clear that it is discriminatory to treat pregnancy-related conditions less favorably than other medical conditions." Newport News Shipbuilding & Dry Dock Co. v. EEOC, 462 U.S. 669, 684 (1983). Plaintiff provided no evidence that Defendants treated her differently from employees with other medical conditions.

The standard for summary judgment is whether there exists a genuine issue as to any material fact. Fed. R. Civ. P. 56(c). Disputes over immaterial facts are insufficient to withstand summary judgment. An issue of fact is "material" if proof of it might affect the outcome of the lawsuit. Anderson, 477 U.S. at 248.

First, Plaintiff claims the trial court ignored Plaintiff's affidavits while using language found in Defendants' documents. This general complaint fails to explain how this amounts to the court deciding material facts in dispute against the non-moving party.

Plaintiff asserts the trial court improperly decided facts concerning a meeting between Plaintiff and Defendant Landrath-Schmidt on August 13, 1992. The court stated, "When they arrived, Gooch, who was pregnant, told them that she was in pain and having frequent contractions. Landrath-Schmidt asked Gooch if she should not be at home or in the hospital." [Appellant's App. at 73-74 (Dist. Ct. Op. at 3-4)]. Plaintiff disputes this fact, claiming that Defendant Landrath-Schmidt insisted on Plaintiff staying at work to write up the budget. [Appellant's Br. at 26]. Not only is Plaintiff's assertion contradicted by her own statements in her deposition, but she has never alleged that she asked to leave work because of her pregnancy.[3] Plaintiff has not linked her pregnancy to her claim that

_____

[3] Plaintiff testified in her deposition:

[M]y contractions were not that severe at that time. I would have stayed

10

Defendants forced her to stay at work.  In short, Plaintiff does not explain how this fact is material to her discrimination claim.

Next, Plaintiff claims the trial court accepted the Defendants' allegations that fire drills were not conducted, despite Plaintiff's affidavits disputing this fact.  Plaintiff has only shown that this fact is disputed.  Even if a genuine dispute exists, Plaintiff has not explained how this fact would affect the outcome of Plaintiff's gender or maternity discrimination claims.

Plaintiff also claims the trial court ignored the affidavit of a nurse who was allegedly discriminated against by Meadowbrook because of her pregnancy.  In actuality, the trial court stated that "Gooch cites the affidavit of a nurse at the Center who infers that she was not allowed a promotion on the basis of her pregnancy.  But this event occurred several years after Gooch's termination, and there is nothing linking it to the action relating to Gooch." [Appellant's App. at 78 (Dist. Ct. Op. at 8)].  Plaintiff also states that the trial court ignored evidence of a male administrator who was retained

home, but they were still very early, very mild, and it was very important to me to meet my new supervisor and to find out where I stood and what to do. And all I could get from her [Ms. Landrath-Schmidt] in any kind of response was you should be home, you must be exhausted.

[Appellee's App. at 346].

despite being cited for deficiencies more serious than those for which the Sedgwick facility was cited. Incidents involving other employees are relevant. However, these two purported instances of discrimination--occurring more than two years after Plaintiff's termination--were not material facts establishing gender or pregnancy discrimination.

It is the Plaintiff's burden, in responding to Defendants' summary judgment motion, to go beyond the allegations in her complaint and designate specific facts which would establish a genuine issue for trial concerning her allegations of disparate treatment. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). While the district court may have decided disputed facts against the nonmoving party, those facts were not shown to be material to Plaintiff's Title VII claims.

**Plaintiff's Employment Contract Claim**

Plaintiff claims she had a contract of employment with the Meadowbrook Defendants. In support of this contract theory, she cites to a letter offering her employment as administrator for Meadowbrook Manor of Sedgwick, to Meadowbrook's maternity leave policy, and to Meadowbrook's employee termination policy.

Plaintiff's claim is based on supplemental jurisdiction, so it is controlled by Kansas law. The letter cited by Plaintiff contains no statements regarding duration of

employment or limits on termination solely for cause.  [Appellant's App. at 21-22].  Thus, no express contract of employment existed between the parties.

Under some circumstances, implied contracts of employment are recognized in Kansas as an exception to the employment-at-will doctrine.  Brown v. United Methodist Homes, 815 P.2d 72, 81 (Kan. 1991).  In Morriss v. Coleman Co., the Kansas Supreme Court explained:

> "Where it is alleged that an employment contract is one to be based upon the theory of 'implied in fact,' the understanding and intent of the parties is to be ascertained from several factors which include written or oral negotiations, the conduct of the parties from the commencement of the employment relationship, the usages of the business, the situation and objective of the parties giving rise to the relationship, the nature of the employment, and any other circumstances surrounding the employment relationship which would tend to explain or make clear the intention of the parties at the time said employment commenced."

738 P.2d 841, 848-49 (Kan. 1987) (quoting Allegri v. Providence-St. Margaret Health Center, 684 P.2d 1031 (Kan. Ct. App. 1984) (syllabus ¶5)).  In Brown, the Kansas Supreme Court explained that Morriss "recognizes an implied obligation on the employer to not terminate an employee arbitrarily where a policy or program of the employer, either express or implied, restricts the employer's right of termination at will."  815 P.2d at 81.  The two policies cited by Plaintiff, however, were not promulgated until after Plaintiff's employment with the Meadowbrook Defendants was terminated.  [Appellant's App. at 284, 285].  Therefore, these policies cannot be the basis of an implied contract between

13

the parties since they were not in effect at the time of Plaintiff's employment with the Defendants. Additionally, the employee termination policy merely requires notification of the regional vice president before an employee can be terminated; here, Defendant Landrath-Schmidt, the regional vice president was involved in the termination decision. Thus, even if this policy were in effect, it is readily apparent that the Defendants did not violate the policy. Nor can it be said that the Defendants arbitrarily terminated Plaintiff's employment.

Plaintiff argues that it is improper to decide on summary judgment whether an implied employment contract existed because it is a factual issue upon which reasonable minds could easily reach different conclusions. [Appellant's Br. at 34]. We reject this argument here because the facts cut so clearly against the existence of an implied employment contract under Kansas law. Accord Farthing v. City of Shawnee, Kan., 39 F.3d 1131, 1138 (10th Cir. 1994). Plaintiff has failed to show any evidence of an implied contract through the conduct of the parties, or any intent or understanding on behalf of the parties to enter into a contract of employment. Plaintiff even acknowledged that she could have severed her employment relationship with the Meadowbrook Defendants at any time. [Appellees' App. at 261-64, 349]. Thus, the undisputed facts support the entry of summary judgment as a matter of Kansas law for the Defendants in regard to Plaintiff's implied breach of contract claim.

14

AFFIRMED.

                                      Entered for the Court

                                      Monroe G. McKay
                                      Circuit Judge