Joseph F. LIERZ, Plaintiff,

v.

COCA COLA ENTERPRISES, INC., Defendant.

No. Civ.A. 98–2043–GTV.

United States District Court, D. Kansas.

Feb. 18, 1999.

Sue Phillips, Elizabeth A. Phillips, Denise St Omer, Phillips & Phillips, Kansas City, MO, for Joseph F. Lierz, plaintiff.

William C. Martucci, Eric W. Smith, Spencer, Fane, Britt & Browne, Kansas City, MO, for Coca Cola Enterprises, Inc., defendant.

### MEMORANDUM AND ORDER

VAN BEBBER, District Judge.

Plaintiff Joseph F. Lierz brings this diversity action against defendant Coca Cola Enterprises, Inc. alleging wrongful discharge in violation of Kansas public policy, breach of express and implied contracts of employment, and a claim involving a promissory estoppel. The case is before the court on defendant's motion for summary judgment (Doc. 63). For the reasons set forth below, defendant's motion is granted in part and denied in part.

## I. SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be met by showing that there is an absence of evidence to support the nonmoving party's case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. *See Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. "A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *See id.* The court must consider the record in the light most favorable to the party opposing the motion. *See Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir.1984).

## II. FACTUAL BACKGROUND

The following facts are either uncontroverted or are based on evidence submitted with summary judgment papers viewed in a light most favorable to plaintiff. Immaterial facts and facts not properly supported by the record are omitted.[1]

Defendant is engaged in the business of bottling, selling, and distributing carbonated soft drinks and other non-alcoholic beverage lines that are primarily produced by the Coca Cola Company. Plaintiff was employed in the human resources department in the Lenexa, Kansas office of defendant from October 30, 1995 through September 30, 1997. After initially interviewing with defendant, plaintiff received an offer letter dated October 20, 1995 from Leigh Sokoloff, defendant's then-Director of Human Resources in Lenexa. The offer letter described the position of Employee Relations Manager. Plaintiff accepted this position.

### A. Facts Relevant to Wrongful Discharge Claim

In February 1996, Brian LaVelle became the new Director of Human Resources in Lenexa and plaintiff's supervisor. On March 14, 1997, LaVelle completed a Performance Appraisal of plaintiff. LaVelle rated plaintiff as "Needs Improvement" in seven out of the sixteen individual categories, while rating plaintiff as "Fully Satisfactory" overall. In reference to the March 1997 Performance Appraisal, plaintiff testified in his deposition that there were things he needed to work on and that he was not happy with the review.

In the summer of 1997, Bill Masterson, defendant's Southern Area Manager, created a promotional program involving the placement of mini-vending machines with Kansas City Chiefs' logos in Kansas City area Price Chopper stores. The mini-vendors were promotional giveaways for defendant's customers and were to be used as a marketing tool. The mini-vendor was a novelty and a collectable because of its uniqueness. In the past, defendant has provided many different pro-

motional and incentive activities for its customers and sales personnel.

On August 17, 1997, Masterson showed plaintiff the mini-vendors. Masterson told plaintiff that the mini-vendors were promotional items, which were "strictly" to be used as customer giveaways. Around the end of August or the beginning of September, Masterson gave Mike Stevenson, the Lenexa facility branch manager, and Drew Heenan, a sales manager at the Lenexa facility, permission to have a mini-vendor for their personal use. Masterson believed that the mini-vendors would promote the image of defendant in general, and specifically to customers entertained by Stevenson and Heenan. In early September 1997, the mini-vendors were delivered to the homes of Stevenson and Heenan by defendant's employees, using defendant's vehicles and equipment.

On September 17, 1997, Chip Malinowski, defendant's Cooler Service Manager, mentioned to plaintiff that two mini-vendors had been delivered to the homes of Stevenson and Heenan. Malinowski testified in his deposition that when plaintiff learned of the mini-vendor deliveries, he became a little emotional because he did not feel it was right for upper management to have such perks. Plaintiff testified in his deposition that it was conceivable that items as large as the mini-vendors could be given away, but he thought that it was strange. After confirming the deliveries with the Cooler Service Supervisor, plaintiff felt that something inappropriate had happened.

Late in the day on September 17, 1997, plaintiff described the mini-vendor situation to his supervisor, LaVelle. Plaintiff testified in his deposition that he believed that he told LaVelle that the situation involved some misappropriation and inappropriate behavior by Stevenson and Heenan. LaVelle told plaintiff that he had done the right thing by bringing the mini-vendor situation to LaVelle's attention. According to plaintiff's

---

1. Local Rule 56.1 requires plaintiff to controvert defendant's statement of facts with specific references to the evidentiary record. Any statements of fact relying on evidence not adequately referenced in the record or not submitted with the

summary judgment pleadings have been disregarded. *See Amro v. Boeing Co.*, No. 97–3049, 1998 WL 380510, at *1 n. 1 (10th Cir. July 8, 1998).

notes, LaVelle told plaintiff that defendant had given away vendors before.

In plaintiff's notes written the evening after he reported the mini-vendor situation to LaVelle, plaintiff stated, "I felt that Mike and Drew taking the vendors was inappropriate due to cost." Plaintiff's notes reflect his concern about the "extremely poor judgment on mgt in the eyes of the hourly workers who wish to purchase old vendors." Plaintiff brought the situation to LaVelle's attention because plaintiff believed that Stevenson and Heenan's actions were inappropriate.

Around five o'clock in the evening on September 17, 1997, LaVelle and Stevenson embarked on their routine jogging exercise. LaVelle asked Stevenson about the mini-vendor. Stevenson told LaVelle that Masterson had approved Stevenson's use of the mini-vendor. Later that evening, LaVelle called plaintiff at home and informed him that Masterson had approved the use of the mini-vendors. Plaintiff testified in his deposition that LaVelle also told plaintiff that he had not handled the situation in an appropriate manner because Stevenson and Heenan's personal use of the mini-vendors would cast Tom Rice, who had just promoted Stevenson and Heenan, in an unfavorable light. Plaintiff responded by telling LaVelle that regardless of how it made Rice look, LaVelle needed to look after the interests of the company.

On September 19, 1997, Masterson approached plaintiff. Masterson commented on plaintiff's mini-vendor investigation and activities. Masterson referred to plaintiff as a "secret squirrel" or a "squirrel chasing or hiding a nut," implying that plaintiff was sneaking around behind the scenes, doing investigations and private eye work. Masterson was upset, but friendly with plaintiff. Masterson told plaintiff that he should have gone to Stevenson and Heenan first so that plaintiff would have understood that the mini-vendors were not an issue. Masterson told plaintiff that investigative incidents similar to the mini-vendor situation led employees to distrust human resources. In this conversation, plaintiff stated that he believed Stevenson and Heenan exhibited poor judgment. Masterson told plaintiff that management should have handled the mini-vendors differently and should have made the mini-vendors an incentive. Later that evening,

plaintiff left LaVelle a voice message mentioning plaintiff's discussion with Masterson and stating that plaintiff wanted to discuss his career with LaVelle on Monday.

In the morning of September 22, 1997, plaintiff met briefly with LaVelle, and plaintiff described his conversation with Masterson. Plaintiff and LaVelle planned to meet for a more lengthy meeting that afternoon. LaVelle testified in his deposition that after the morning meeting, he wrote down several performance issues that he wished to discuss with plaintiff that afternoon. During their afternoon meeting, LaVelle gave plaintiff a frank evaluation of his performance. Plaintiff testified in his deposition that this meeting started with an accelerated performance review which was critical of his job performance. Plaintiff did not accept the criticism, and he openly disagreed with LaVelle. At one point during the meeting, plaintiff wanted to stop the meeting because he was too upset to continue.

While plaintiff denies any formal criticism or written counseling by LaVelle after the March 1997 review and before the mini-vendor situation on September 17, 1997, plaintiff admits that on various occasions in 1997 LaVelle may have offered comments about plaintiff's performance as "casual advice." Plaintiff also admits that he and LaVelle would talk about issues regarding plaintiff's performance. Until the afternoon meeting on September 22, 1997, however, plaintiff had "no inkling" that LaVelle thought that plaintiff was not meeting standards. Plaintiff received no formal counseling or written evaluation addressing his alleged performance deficiencies after his March 1997 review up until the September 22 meeting.

On September 22 or 23, 1997, plaintiff met with an attorney to discuss his employment situation with defendant. Plaintiff again met with his attorney in the morning of September 24, 1997. At 3:40 P.M. on September 24, 1997, plaintiff placed a memorandum on LaVelle's desk suggesting that plaintiff was being retaliated against for reporting "what appears to be misappropriation of company property." At 4:00 P.M., LaVelle telephoned plaintiff to discuss the memorandum. LaVelle requested that plaintiff take adminis-

trative leave with pay until LaVelle returned to the office on Monday, September 29, 1997.

On Monday, September 29, 1997, plaintiff had a second memorandum delivered to La-Velle. In this second memorandum, plaintiff again expressed his concern that he was being retaliated against. When LaVelle and plaintiff met at approximately 8:00 A.M. on September 30, 1997, LaVelle reiterated plaintiff's various performance deficiencies. Plaintiff did not agree nor accept LaVelle's opinion, and LaVelle perceived plaintiff as visibly upset and dismayed. During this meeting, plaintiff said, "The only options I have are going back to work and doing my job, you are going to terminate, or you are going to offer me a settlement agreement?" Plaintiff testified in his deposition that during this meeting he thought that if LaVelle was to present plaintiff with a settlement agreement, he would consider it. Because LaVelle was unprepared to make a settlement offer at that time, the two agreed to meet later that afternoon at a restaurant. During the restaurant meeting, LaVelle presented plaintiff with a severance agreement and gave him one month to consider it. When plaintiff rejected the severance agreement, he was terminated from his employment with defendant.

### B. Facts Relevant to Contract Claims

Plaintiff relies on the following for his express and implied contract claims: defendant's Code of Business Conduct, the Company Work Rules of Conduct, the code of conduct pamphlet, his offer letter, his performance reviews, and what he perceives to be the past practice of defendant regarding termination and discipline. Plaintiff testified in his deposition that he characterized the above as what was "expected for me to keep my employment," and "I figured if I stayed by those, that was the good cause." Plaintiff signed two acknowledgments identifying his status as an at-will employee.

During the course of plaintiff's employment, LaVelle emphasized to plaintiff the importance of gathering documentation on employee performance issues because human resources needed good cause to support a termination. LaVelle also repeatedly told

plaintiff that it was defendant's practice not to terminate any employee unless there was good cause. While plaintiff was not completely happy with his March 1997 performance review, LaVelle told plaintiff that his review was still a very good review. LaVelle also told plaintiff that he needed one or even two overall "Needs Improvement" ratings before he would be in trouble or be terminated. Masterson, defendant's Southern Area Manager, testified in his deposition that it was his interpretation of the company policy not to terminate an employee without good reason.

### C. Facts Relevant to Promissory Estoppel Claim

Defendant's Code of Business Conduct on page 28 states in relevant part:[2]

> If you have information or knowledge of any act or practice which is illegal or prohibited under the provisions of this handbook, or which you believe to be unethical, you must promptly report such matter either to your supervisor, sales center manager, division human resources manager, division general manager, or the hotline.... Every reasonable effort will be made to ensure the confidentiality of those furnishing information. In no event will any action be taken against you for making a complaint or disclosing information in good faith. You will not lose your job for refusing an order you reasonably believe would violate the provisions of this handbook, and any retaliation against you is prohibited.

### III. DISCUSSION

### A. Wrongful Discharge Claim: Whistleblowing

Plaintiff alleges that he was discharged in response to reporting the alleged misappropriation of the mini-vendors to his supervisor, LaVelle. Plaintiff claims that such action constituted retaliation for whistleblowing in violation of Kansas public policy. The federal district courts in Kansas apply the burden-shifting approach used in discrimination cases to analyze state-law retaliatory

---

**2.** Plaintiff also relies on this language to support his express and implied contract claims.

discharge claims. *See Bowers v. Bethany Med. Ctr.,* 959 F.Supp. 1385, 1392 (D.Kan. 1997).

■ Kansas is an "employment at will" state. *Johnson v. National Beef Packing Co.,* 220 Kan. 52, 551 P.2d 779 (1976). Generally, "in the absence of an express or implied contract between an employee and employer regarding the duration of employment, either party is free to end the employment at any time for any reason." *Palmer v. Brown,* 242 Kan. 893, 896, 752 P.2d 685 (1988) (citing *Johnston v. Farmers Alliance Mut. Ins. Co.,* 218 Kan. 543, 546, 545 P.2d 312 (1976)).

■ In *Palmer,* the Kansas Supreme Court recognized the tort of retaliatory discharge as a public policy exception to the employment-at-will doctrine. *Id.* at 900, 752 P.2d at 690. To establish a prima facie case for whistleblowing, an employee has the burden of proving the following: (1) A reasonably prudent person would have concluded the employee's co-worker or employer was engaged in activities in violation of the rules, regulations, or law pertaining to public health, safety, and general welfare; (2) the employer had knowledge of the employee's reporting of such violation prior to discharging the employee; and (3) the employee was discharged in retaliation for making the report. *See id.* The employee must prove the claim "by a preponderance of the evidence, but the evidence must be clear and convincing in nature." *Ortega v. IBP, Inc.,* 255 Kan. 513, 528, 874 P.2d 1188 (1994). The whistleblowing must have been done out of good faith rather than from a corrupt motive such as malice, spite, jealousy, or personal gain. *See Palmer,* 242 Kan. at 900, 752 P.2d at 690.

Defendant first contends that plaintiff's report of the mini-vendor situation was not a good faith report of an alleged violation of the rules, regulations, or laws pertaining to public health, safety, and general welfare because plaintiff only reported activities that he characterized as "inappropriate." Defendant contends that because plaintiff did not use the terms "misappropriation" or "theft" until after LaVelle informed plaintiff that use of the mini-vendors was authorized, the reports were not in good faith as required by *Palmer.* This argument is without merit.

Plaintiff testified in his deposition that he believed that he told LaVelle in the original report that the situation involved some misappropriation and inappropriate behavior by Stevenson and Heenan.

■ Defendant next alleges that even if plaintiff made the report to his supervisor in good faith, plaintiff's report of the mini-vendor situation did not amount to whistleblowing because a reasonably prudent person would not have concluded that delivery of the mini-vendors was a violation of the rules, regulations, or law pertaining to public health, safety, and general welfare. When plaintiff reported Stevenson and Heenan's personal use of the mini-vendors in their homes to LaVelle, plaintiff was under the distinct impression that the mini-vendors—which were a novelty and collectable item—were to be used "strictly" as customer giveaways. The court concludes that plaintiff has presented sufficient evidence to raise a genuine issue of material fact as to whether a reasonably prudent person in plaintiff's position could have concluded that Stevenson and Heenan's personal use of the mini-vendors in their homes constituted a serious infraction of the law—namely theft.

Defendant argues that it nonetheless is entitled to summary judgment because plaintiff cannot establish the requisite causation. Defendant contends that it discharged plaintiff for legitimate performance deficiencies, not in retaliation for the mini-vendor report.

■ To recover for retaliatory discharge, an employee must prove that the discharge was based on an intent to retaliate. The employee need not prove that retaliation was the sole motive for the termination. *See Ali v. Douglas Cable Communications,* 929 F.Supp. 1362, 1387 (D.Kan.1996) (citing *Brown v. United Methodist Homes for the Aged,* 249 Kan. 124, 146–48, 815 P.2d 72 (1991)). The timing in this case provides an inference of a retaliatory motive. "Protected conduct closely followed by an adverse action may justify an inference of retaliatory motive." *Marx v. Schnuck Markets, Inc.,* 76 F.3d 324, 329 (10th Cir.1996). Plaintiff was ultimately terminated on September 30, less than two weeks after reporting the mini-vendor situation to LaVelle. The court finds

that this temporal proximity is sufficient to raise the inference that the mini-vendor report was the likely reason for his termination. *See Bowers*, 959 F.Supp. at 1392.

Once the plaintiff satisfies his prima facie case, the burden of production shifts to the employer to articulate a facially nondiscriminatory reason for its adverse employment action. *See Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir.1995). Defendant has met this burden by proffering that it discharged plaintiff for legitimate performance deficiencies.

■ To avoid summary judgment at this stage, plaintiff must assert specific facts that suggest defendant's explanation is merely pretext for a retaliatory discharge. *See id.* Pretext may be established by showing either "that a discriminatory reason more likely motivated the employer or ... that the employer's proffered explanation is unworthy of credence." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). "At the summary judgment stage, if the plaintiff produces both a prima facie case and evidence supporting a finding that 'defendant's alleged nondiscriminatory reasons for the employment decisions are pretextual, the case should go to the factfinder.'" *Jones v. Unisys Corp.*, 54 F.3d 624, 630 (10th Cir.1995) (quoting *Ingels v. Thiokol Corp.*, 42 F.3d 616, 622 (10th Cir.1994)).

■ Plaintiff has provided sufficient evidence that defendant's allegedly legitimate reason for terminating him was pretext for retaliation. LaVelle told plaintiff that he handled the mini-vendor situation inappropriately because Stevenson and Heenan's personal use of the mini-vendors was going to reflect negatively on Rice, who had just promoted Stevenson and Heenan. Masterson referred to plaintiff as a "secret squirrel" and told plaintiff that he should have handled the situation differently because the investigation made people distrust human resources. Plaintiff received no formal counseling or written evaluation addressing his alleged performance deficiencies after his March 1997 review until the September 22 meeting. These incidents construed in a light most favorable to plaintiff, coupled with the close proximity of plaintiff's mini-vendor report and his termination, raise genuine issues of material fact with respect to plaintiff's retaliatory discharge claim. Accordingly, summary judgment must be denied on this claim.

## B. Express and Implied Contract Claims

■ Plaintiff alleges that he was discharged in breach of his express and implied contracts of employment. Plaintiff relies on the following for his contract claims: defendant's Code of Business Conduct, the Company Work Rules of Conduct, the code of conduct pamphlet, his offer letter, his performance reviews, and what he perceives to be the past practice of defendant regarding termination and discipline. Plaintiff also relies on certain comments made to him by LaVelle during the course of plaintiff's employment to support his implied contract claim.

The documents cited by plaintiff do not constitute an express contract of employment. After careful review, the court concludes that the documents contain "no statements regarding duration of employment or limits on termination solely for cause." *Gooch v. Meadowbrook Healthcare Servs.*, No. 95–3075, 1996 WL 67193, at *5 (10th Cir. February 16, 1996). Thus, there was no express contract of employment. *See id.* Because the court finds that there is no express contract of employment, plaintiff's argument that he was discharged for his good faith reporting of the mini-vendor situation in violation of the express contract is without merit. Accordingly, the court grants summary judgment on plaintiff's express contract claim.

■ In the absence of an expresswritten contract of employment establishing plaintiff's status, it is "necessary to look at all the facts to determine whether there was an implied contract of continuing employment at the time of the commencement of the employment." *Dickens v. Snodgrass, Dunlap & Co.*, 255 Kan. 164, 174, 872 P.2d 252, 260 (1994). "The existence of an implied contract depends on the intent of the parties, divined from the totality of the circumstances." *Anglemyer v. Hamilton County Hosp.*, 58 F.3d 533, 537 (10th Cir.1995); *see also Morriss v. Coleman Co.*, 241 Kan. 501, 513, 738 P.2d 841 (1987). Whether an implied contract of em-

ployment exists is generally a question of fact for the jury. *See Morriss,* 241 Kan. at 512, 738 P.2d at 848. Summary judgment is rarely appropriate for implied contract claims. *See Conyers v. Safelite Glass Corp.,* 825 F.Supp. 974, 977 (D.Kan.1993).

The court concludes that plaintiff has proffered sufficient evidence to raise a genuine issue of material fact with respect to his implied contract claim. Accordingly, the court denies summary judgment on plaintiff's implied contract claim.

### C. Promissory Estoppel

 Plaintiff also claims wrongful discharge based on a theory of promissory estoppel. Under Kansas law, an employee may recover under promissory estoppel, in certain circumstances, where an employment contract is otherwise unenforceable or where the employee is an at-will employee. *See Glasscock v. Wilson Constructors, Inc.,* 627 F.2d 1065, 1067 (10th Cir.1980); *Lorson v. Falcon Coach, Inc.,* 214 Kan. 670, 679, 522 P.2d 449, 457 (1974). To maintain an action based on promissory estoppel, plaintiff must establish the following: (1) defendant made a promise; (2) defendant made the promise under circumstances where it intended and reasonably expected plaintiff to rely on the promise; (3) plaintiff acted and reasonably relied upon the promise to his detriment; and (4) refusal to enforce the promise would result in injustice. *See Collins v. Old Republic Title Co.,* No. 97–3255, 1998 WL 892282, at *2 (10th Cir. December 23, 1998); *Sharon v. Yellow Freight Sys., Inc.,* 872 F.Supp. 839, 848 (D.Kan.1994).

Plaintiff relies on defendant's Code of Business Conduct, other documents, and statements made to plaintiff as evidence of defendant's promises not to retaliate against plaintiff for his good faith reporting of illegal or prohibited conduct. In reliance on defendant's promises, plaintiff reported the minivendor situation to LaVelle. Defendant argues that plaintiff's claim fails because he has presented no evidence of detrimental reliance. Plaintiff's only alleged detriment is that he was terminated.

 A plaintiff cannot recover reliance damages of lost wages under the doctrine of promissory estoppel without first establishing the existence of a contract of employment, either express or implied. *Lorson,* 214 Kan. at 679, 522 P.2d 449. A plaintiff's alleged damages resulting from his termination do not amount to detrimental reliance if he is an at-will employee because the defendant could discharge the plaintiff at any time, for any reason. *Chrisman v. Philips Indus., Inc.,* 242 Kan. 772, 780, 751 P.2d 140, 145–46 (1988). Because genuine issues of material fact remain with respect to plaintiff's implied contract claim, summary judgment must be denied on the promissory estoppel claim.

IT IS, THEREFORE, ORDERED that defendant Coca Cola Enterprises, Inc.'s motion for summary judgment (Doc. 63) is granted with respect to plaintiff's express contract claim and denied with respect to plaintiff's wrongful discharge/whistleblowing claim, implied contract claim, and promissory estoppel claim.

Copies of this order shall be mailed to counsel of record for the parties.

**IT IS SO ORDERED.**